MacDONALD *v.* STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

INSURANCE—AUTOMOBILES—ACCIDENT—REIMBURSEMENT OF INSURED.
Provision of automobile insurance policy under which insurance
company agreed to pay on behalf of the insured all sums which
the insured became legally obligated to pay as damages because
of bodily injury or property damage caused by accident arising
out of the ownership, maintenance or use of the insured auto-
mobile, *held*, not to cover sums expended by the insured or on
behalf of insured as a volunteer payment.

Appeal from Common Pleas Court of Detroit,
O'Hair (John D.), J. Submitted Division 1 Jan-
uary 11, 1968, at Detroit. (Docket No. 3,022.)
Decided November 29, 1968.

Action by Robert and Greta MacDonald against
State Farm Mutual Automobile Insurance Company
to recover damages resulting from defendant's
breach of contract. Directed verdict for defendant.
Plaintiff appeals. Affirmed.

*William L. Fisher,* for plaintiff.

*Eggenberger & Eggenberger,* for defendant.

BEER, J. Upon this appeal this Court is unable
to accept the statement of facts from the record

before us as claimed in behalf of the plaintiffs. We believe the facts before us are those contained in the trial judge's opinion. We note order dated March 3, 1967, permitting plaintiffs to file less than the whole transcript. The trial judge's opinion reads as follows:

"The Court has before it a motion for directed verdict made on behalf of the defendant in the case entitled Robert and Greta MacDonald versus State Farm Mutual Automobile Insurance Company.

"The action is one of assumpsit wherein the plaintiffs seek to recover for damages allegedly resulting from the defendant's breach of a contract that was existing between the two parties, or the three parties, at the time of the incident upon which the plaintiff premises liability on the part of the defendant.

"In considering defendant's motion for directed verdict, the Court is required to view the evidence in the light most favorable to the plaintiff, and to accept as fact the facts which would be established in viewing the evidence in the light most favorable to the plaintiffs.

"Now, in considering the evidence in such light, in considering the propriety of the defendant's motion, the Court would find the following facts under the doctrine of favorable view: that on February 26, 1966, the plaintiffs or the plaintiff, Robert MacDonald, was the owner of a 1963 Dodge automobile, for which the plaintiff had coverage for public liability insurance under a contract between plaintiffs and the defendant insurance company; and, that on February 26, 1966, while Mr. Robert MacDonald was operating his 1963 Dodge automobile, he was involved in a collision at Gratiot Avenue at or near Gratiot Avenue's intersection with Utica Road. The collision involved three vehicles, and may be described as a chain rear-end type of collision.

"The testimony offered by the plaintiff would establish that as Mr. MacDonald was proceeding on Gratiot Avenue there was a vehicle directly in front of him and in his lane of travel; that the vehicle was operated by a Mr. Cling; that as Mr. Mac-Donald approached the rear of the Cling vehicle—pardon me—as Mr. MacDonald was in immediate proximity of the Cling vehicle, his vehicle was either stopped, almost stopped, or he had it under such control that he could bring his vehicle to a stop without colliding with the rear end of the Cling vehicle. While in such position, a vehicle operated by a Mr. Lucy, proceeding in the same direction and in the same lane of travel as Mr. MacDonald and Mr. Cling, struck the rear end of the MacDonald vehicle forcing the front end of the MacDonald vehicle into the rear end of the Cling vehicle, causing damages to both the MacDonald vehicle and to the Cling vehicle and also probably causing personal injuries to Mrs. Cling, who was a passenger in the Cling vehicle.

"The testimony would further establish that there was conversation at the scene of the collision between Mr. MacDonald and Mr. Cling; and, under the doctrine of favorable view I think it would be required to be found, that Mr. Cling did not absolve Mr. MacDonald of fault for the collision. Further, either the following day or several days later, Mr. Fisher, as the attorney representing the Mac-Donalds, telephoned Mr. Cling and, among other things, inquired about the possibility of Mr. Cling or Mrs. Cling making a claim against Mr. Mac-Donald for the collision or for any personal injuries that any of the parties in the Cling vehicle may have sustained. Mr. Cling indicated to Mr. Fisher that he was going to look to both insurance carriers for satisfaction. The insurance carriers to which Mr. Cling had reference was the insurance carrier of the plaintiffs, State Farm, and also to the insurance carrier for Mr. Lucy, Michigan Mutual Liability Insurance Company. Thereafter, Mr. MacDonald

or Mr. Fisher apparently had no further contact with Mr. Cling.

"Mr. MacDonald contacted Mr. Fisher to represent him on possibly three matters: first, the MacDonald claim against Mr. Lucy for damages to the MacDonald automobile and the injuries that Mr. MacDonald may have sustained; secondly, on any possible claim that the Clings would make against Mr. MacDonald in the event that State Farm would not assume coverage for the collision; and, thirdly, to represent Mr. MacDonald on any claim that he may have against State Farm for its failure to accept coverage for the subject collision.

"Thereafter, Mr. Fisher had numerous contacts with a Mr. Aul, who was an agent for Michigan Mutual Liability Company. During the course of the contacts with Mr. Aul, he advised Mr. Fisher that Michigan Mutual Liability Company was negotiating a settlement with the Clings, that a settlement was imminent; and, that in the event it was effectuated, Michigan Mutual Liability Company was not going to look to the MacDonalds or Mr. MacDonald for contribution. Mr. Fisher, believing it was in the best interest of his clients, under the circumstances where coverage was disputed, made arrangements whereby the release to be obtained by Michigan Mutual from the Clings would further release the MacDonalds from any claim that the Clings might have against them; such provision, however, being conditioned upon Mr. MacDonald, or somebody on his behalf, contributing $50 to the settlement, which was done.

"The Court believes that these facts are the salient facts in resolving the motion for a directed verdict; however, there are two others that should be mentioned: the first of which is that the plaintiffs rely on Coverages A & B, Paragraph 1 of the contract of insurance between them and the defendant. Further, Mr. Fisher rendered services on behalf of the MacDonalds, which the Court under

the doctrine of favorable view must conclude were beneficial to the MacDonalds.

"The provisions upon which the plaintiffs rely are quoted as follows:

" 'Coverage A and B—(A) Bodily Injury Liability and (B) Property Damage Liability.

" '(1) To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of (A) bodily injury sustained by other persons, and (B) property damage, caused by accident arising out of the ownership, maintenance or use, including loading or unloading, of the owned automobile; and to defend any suit against the insured alleging such bodily injury or property damage and seeking damages which are payable hereunder even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient.'

"The provisions upon which the plaintiffs rely are very clear. They impose liability upon the defendant under certain circumstances. The insurer agrees to pay on behalf of the insured all sums which the insured shall become legally obligated to pay. Secondly, to defend any suit against the insured alleging such bodily injury or property damage, etc.

"The plaintiffs have not introduced any competent evidence that would establish or tend to establish that Mr. MacDonald, at any time, incurred any legal obligation to pay any damages incurred by the Clings. Clearly, there has been no evidence introduced to establish that the Clings maintained any judicial proceedings against the MacDonalds and obtained a judgment. Secondly, from the proofs that have been introduced describing the collision that occurred on February 26, 1966, if that case were before the Court, it would have to direct a verdict of no liability on the grounds that viewing the evidence in the light most favorable to the Clings that

a reasonable mind could not conclude that Mr. Mac-
Donald was guilty of any negligence whatsoever
that was the proximate cause of the Clings damages.

"Thirdly, there has been no evidence introduced
at all establishing or tending to establish that any
action was at any time maintained by the Clings
against the MacDonalds. There is no assertion
whatsoever that legal proceedings or a suit, specif-
ically, had been instituted by the Clings against the
MacDonalds.

"The promises set forth in the provisions upon
which plaintiffs rely do not include the promise to
pay sums expended by the insured or on behalf of
the insured as a volunteer payment. And the Court
concludes that, although it may have been beneficial
to Mr. MacDonald and Mrs. MacDonald or both—it
probably was beneficial to them to be included in the
release executed by the Clings—that such payment
was that of a volunteer for which, under the pro-
vision on which the plaintiffs rely, there is no right
of recovery. Motion for directed verdict is granted.

\* \* \*

"Plaintiffs' counsel has requested the Court to
make a statement for purposes of the record and
for purposes of a possible appeal that, under the
doctrine of favorable view, the following fact would
be established; an agent of State Farm, upon a
visit to the MacDonald home, tendered to Mrs.
MacDonald a document that has been introduced
in evidence and is described as Plaintiffs' Exhibit
No 12, which states as follows:

" 'Authorization for claim service and non-waiver
of rights.

" 'The undersigned requests and authorizes State
Farm Mutual Automobile Insurance Company to
investigate, negotiate, settle, deny or defend any
claim arising out of an accident or occurrence on
or about February 26, 1966. It is agreed that such
actions shall not waive any of the rights of the

undersigned or of the company under any contract of insurance.

" 'Dated at 24701 Tallman, Warren, Michigan, this 1 day of March, 1966.'

"Under the doctrine of favorable view, it would be established that defendant's agent tendered this document to Mrs. MacDonald with the request that both she and her husband execute it and that unless both executed the document described as Plaintiffs' Exhibit No 12, State Farm would not accept coverage of the subject collision nor investigate the subject collision due to the fact that there was some question as to whether or not a policy was in force between the plaintiffs and the defendant as to the 1963 Dodge automobile that was operated by Mr. MacDonald at the time of the collision and with which he was involved in the collision."

Plaintiffs assert the lower court erred in attempting to enforce the terms of the insurance contract against the plaintiffs in view of the defendant's prior breach of said insurance contract by defendant's denial of coverage and insistence upon the plaintiffs' signing a non-waiver agreement before the defendant would investigate the Clings' claims against the plaintiffs.

Defendant asserts the true question for review to be:

"Did the trial court err in ruling as a matter of law that plaintiffs-appellants failed to present any evidence of breach of contract on the part of the defendant-appellee?"

We agree.

We fail to see how this Court can improve upon the opinion of the lower court answering the issue in favor of the defendant. It is well reasoned on

the facts and the law applicable. We adopt it as our own and affirm, with costs.

T. G. KAVANAGH, P. J., and LEVIN, J., concurred.