GIFFELS *v.* THE HOME INSURANCE COMPANY

1. INSURANCE—LIABILITY OF INSURED—SETTLEMENT—APPROVAL OF INSURER.

   An insurer is not obligated to reimburse an insured for money spent by the insured to settle a claim against it where the settlement was made without the approval of the insurer and the policy provides that the insurer will reimburse the insured only for amounts the insured becomes *legally* obligated to pay.

2. INSURANCE—LIABILITY—RIGHT TO ADJUST CLAIM.

   For a denial of liability to constitute a release of the insured from the provision of a policy granting the insurer the right to adjust the loss and to conduct and control the defense of actions arising from claims, it is also necessary for the insurer to refuse to defend the action.

3. INSURANCE—DENIAL OF LIABILITY—REFUSAL TO DEFEND—RELEASE FROM POLICY.

   An insurer never refused to defend a claim against its insured, and therefore no release of the policy conditions occurred where the insurance company agreed to pay the claim should the insured be found legally liable to the claimant for the loss, and claimant never brought an action against the insured.

4. INSURANCE—RELEASE FROM POLICY—DENIAL OF LIABILITY.

   A release of the insured from the policy conditions cannot be predicated solely upon the insurer's denial of liability.

Appeal from Ingham, Sam Street Hughes, J. Submitted Division 2 May 7, 1969, at Lansing. (Docket No. 6,014.) Decided August 28, 1969.

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 7 Am Jur 2d, Automobile Insurance §§ 164–170.

Consequences of liability insurer's refusal to assume defense of action against insured upon ground that claim upon which action is based is not within coverage of policy. 49 ALR2d 694.

Complaint by Harold A. Giffels against The Home Insurance Company and John W. Stratton, its agent, for reimbursement of a liability claim which the plaintiff-insured settled on his own with the claimant before the insurer determined the legal liability of the plaintiff-insured. Judgment for defendant. Plaintiff appeals. Affirmed.

*Glassen, Parr, Rhead & McLean,* for plaintiff.

*Peter J. Treleaven,* for defendant.

Before: LESINSKI, C. J., and QUINN and DANHOF, JJ.

LESINSKI, C. J.   Plaintiff is a Lansing fur retailer who regularly orders coats on consignment from various wholesalers for showing to specific customers. Coats on consignment from New York or Chicago are usually shipped by air, and shipments from Detroit are usually made by bus.

On December 30, 1958, plaintiff called Milton Weiss, a wholesale furrier in Detroit, asking him to ship a certain mink coat, valued at $2,100, by bus on consignment. Weiss replied that since his insurance would not cover the coat if shipped by bus, he would not ship it by bus unless it would be covered by plaintiff's insurance. Plaintiff thereupon called Clayton Benjamin, an employee of Stratton Insurance Agency who regularly handled plaintiff's account, to inquire whether his insurance would cover the shipment by bus. Benjamin had in his files either the original or a copy (the testimony varies) of the furriers' block policy issued to plaintiff by The Home Insurance Company. Benjamin stated that he was sure there was coverage, but he would check and call back. Benjamin then called Robert Eisley, an under-

writer for The Home Insurance Company who had offices in Detroit. Mr. Eisley confirmed Benjamin's opinion that the policy covered shipment by bus. Therefore, Benjamin called plaintiff and told him that the policy would give coverage of $2,000 under one clause or $3,000 under another clause for shipment by bus.

After getting this assurance, plaintiff called Milton Weiss and told him to ship the coat by Greyhound bus since plaintiff was insured. The coat arrived in due course, but plaintiff was unable to complete the sale. Thereafter, on January 5, 1959, plaintiff shipped the coat back to Milton Weiss by bus, declaring its value on the shipping form to be $200, which is the maximum liability assumed by Greyhound on any item shipped with it. The coat was lost or stolen in the Detroit bus depot and never returned to Mr. Weiss.

Upon learning of the loss, plaintiff promptly notified The Home Insurance Company and signed a proof of loss and a subrogation of claim against the bus company. It soon became apparent that the furrier's block policy in fact excluded coverage for shipment by bus in the manner used.

The original policy issued to plaintiff in 1954 or earlier had provided coverage for bus shipment, and plaintiff had regularly used that mode of shipment. Moreover, on several previous occasions, plaintiff had called Clayton Benjamin to verify coverage before shipping furs of high value by bus. In every case, Benjamin advised plaintiff that there was coverage, and he shipped by bus in reliance on that advice; but no loss had occurred until the instant transaction.

However, the policy terms were changed in 1956 when Home Insurance Company, along with the other major carriers in the field, adopted a standard

form for the furrier's block policy, which was drawn up by the National Bureau of Inland Marine Underwriters. The new standard form contained a limitation of coverage to certain specified modes of shipment, which clearly do not include bus shipment under minimum security and limited liability.[1] Neither Mr. Benjamin nor Mr. Eisley noted this change, and even two years later they continued to give false advice regarding the coverage.

Defendant Stratton testified at trial that he exerted his influence with Home Insurance Company to pay the loss even though they were not legally bound to do so, because he felt badly about the situation. On September 30, 1959, at a meeting in Stratton's office at which plaintiff, Stratton, Benjamin, and Eisley were present, Eisley announced that Home Insurance Company had decided to pay the loss, but only if plaintiff were found legally liable to Weiss for the loss of the coat. This announcement was consistent with insurance policy provisions which stated that the insurer shall be liable for:

"the property of others who are dealers in such property or otherwise engaged in the trade *for which the assured may be liable.*" (Emphasis supplied.)

The insurance policy further provided that:

"In case of loss or damage to property of others held by the assured, for which claim is made upon the company, the right to adjust such loss or damage

---

[1] The policy reads:

"5. Property in custody of public or common carriers or postal authorities is not covered unless subject to the following conditions: * * *

"D. Motor carriers or truckmen when under receipt of:

"(1) those operating exclusively as a merchant's parcel delivery service;

"(2) those assuming full liability for the merchandise shipped or those operating a specialized fur delivery service using fully enclosed vehicle(s) guarded by armed guards or protected by automatic theft alarm system;

"(3) armored car carriers."

with the owner or owners of the property is reserved
to the company and the receipt of such owner or
owners in satisfaction thereof shall be in full satis-
faction of any claim of the assured for which such
payment has been made. If legal proceeding be
taken to enforce a claim against the assured as re-
spects any such loss or damage, the company re-
serves the right at its option, without expense to the
assured, to conduct and control the defense on be-
half of and in the name of the assured."

Despite these provisions and the insurer's express
admonition, plaintiff voluntarily issued a trade ac-
ceptance to Weiss for $2,100 without ever securing
or attempting to force a legal determination of his
liability, so as to deny the insurer an opportunity to
adjust the loss with Weiss. Upon Home Insurance
Company's refusal to reimburse plaintiff for his
payment to Weiss, plaintiff instituted this action
against defendants, seeking recovery on the basis
of the provisions of the policy itself, a negligence
failure to secure proper coverage, the negligence
of the company's agents in their explanation of the
coverage of the policies, and plaintiff's detrimental
reliance upon the statements of the insurer's agents.

After trial by the court sitting without a jury, the
trial court rendered a judgment of no cause of action
against plaintiff. Plaintiff appeals.

Plaintiff raises a number of contentions in assert-
ing that he was entitled to recovery of the $2,100
from the insurer, arguing: (1) that the $2,100 loss
was covered by the terms of the policy; (2) that even
if the loss were not covered by the policy, plaintiff
detrimentally relied upon the statements of the com-
pany's agents and is entitled to recovery; (3) that
defendant company improperly changed plaintiff's
coverage without advising plaintiff of the change
omitting coverage for the loss in the instant case;

and (4) that defendant was liable because plaintiff had a legal duty to pay Weiss for the $2,100 loss.

Defendants in reply contend *inter alia* that the trial court properly granted a judgment of no cause of action because plaintiff by voluntarily settling the loss with Weiss without defendant company's consent, relieved defendants of all liability.

We consider defendants' contention first as it is dispositive of the issues on appeal. In 44 Am Jur 2d, Insurance, § 1524, p 398, the general rule is stated:

"Clauses are usually found in policies of liability insurance giving the insurer the right to make such investigation, negotiation, and settlement of any claim or suit as it deems expedient. Such policies usually also contain a clause which prohibits the insured from voluntarily assuming any liability, settling any claims, incurring any expense, or interfering in any legal proceedings or negotiations for settlement, unless with the consent of the insurer. The purpose of such provisions is to prevent collusion as well as to invest the insurer with the complete control and direction of the defense or compromise of suits or claims, and there is no doubt as to the validity of such provisions.

"If the conduct of the insured is clearly in violation of the clauses under discussion, the insurer is relieved of all liability on the claim. But there are several cases strongly holding that such clauses cannot be construed to prevent the insured from settling with the claimant for any liability to which he may be subjected by judgment in excess of the amount to which he is indemnified in the policy. A clause incapable of any construction but that would, the cases hold, be void as contrary to public policy." (Footnotes omitted.)

The Michigan Supreme Court approved an analogous statement of this rule in *Stephens* v. *Pennsylvania Casualty Company* (1903), 135 Mich 189, where the

policy provided that the indemnity "shall not be payable until the loss or damage has been adjusted and settled by the company". Regarding this insurance policy, the Michigan Court stated:

> "If the railway company had settled the case * * * without the defendant's consent or against its protest, the defendant would have been discharged from liability."

Similarly, in *Dreyfus* v. *St. Paul Fire & Marine Ins. Co.* (1964), 238 Ark 724 (384 SW2d 245), the court in denying defendant-insurer's liability stated:

> " 'The defendant was under no duty to settle the claim. The policy gave it the option of contesting it, if it saw fit to do so. It had the right to await the decision of the court as to the claimant's demand or to pay such sum in settlement as it saw fit.' "

See 7A Appleton, Insurance (1942), § 4714, p 587; 34 ALR 730; and *Louisiana Farm Supply Co.* v. *Federal Mutual Insurance Co.* (Mo App, 1966), 409 SW2d 239.

In the instant case the insurance policy clearly provides that the insurer shall only be liable for property for which the insured shall be liable. Similarly, the company in expressing its willingness to pay the loss, conditioned payment upon a prior determination that the insured be found legally liable to Weiss for the value of the coat. The insurer reserved the right to adjust the loss with Weiss and, at the company's option, to conduct and control the defense on behalf of the insured. Under these policy provisions and the express cautionary instructions of the insurer, the insured was not entitled to settle the Weiss claim without the consent of the insurer.[2]

---

[2] In the instant case, both the amount of the claim ($2,100), and the amount of the settlement ($2,100), were below the policy limits on coverage ($3,000 under one clause and $2,000 under another clause). Therefore, the insured cannot assert in this case that he

Since the insurer never consented to the settlement, the insurer was improperly denied the right to effect an adjustment of the claim or to conduct a defense to an action. Plaintiff, by his settlement with Weiss, released the defendants from liability.

Plaintiff may assert in reply that the insurer in denying liability breached the insurance policy, thereby releasing plaintiff from that provision of the policy granting the insurer the right to adjust the loss and to conduct and control the defense. However, 142 ALR 809 indicates that a release occurs only where the insurer, in addition to denying liability, refuses to defend the action. It states (p 812):

> "Where a liability insurer denies liability for a claim asserted against the insured *and* refuses to defend an action therefor, it is generally held that the insured is released from a provision of the policy against settlement of claims without the insurer's consent * * * and that under such circumstances, the insured may make a reasonable compromise or settlement without losing his right to recover on the policy." (Emphasis supplied.)

See, also, 49 ALR2d 694 (regarding consequences of an insurer's refusal to assume defense of an action against the insured); and 133 ALR 1516. Similarly, the Michigan Supreme Court in *Elliott* v. *Casualty Ass'n of America* (1931), 254 Mich 282, indicated that an insured is released from its agreement not to settle suits without the insurer's consent, where the insurer both denies liability and wrongfully refuses to defend the action. In *dicta*, the Court added

was legally entitled to settle with the claimant for any liability to which plaintiff may be subjected by judgment in excess of the amount for which he is indemnified in the policy. See 44 Am Jur 2d, Insurance, § 1524, p 398. See, also, 142 ALR 809 (regarding settlement by the insured where the claim exceeds the limit of the insurer's liability under the policy, where the insurer refuses to defend or where the insurer otherwise delays taking action).

that the insurer could have protected itself by a simple notification to the insured that in defending, it did not waive its right to later deny liability. Thus, to constitute a release, a refusal to defend must occur.

In the instant case the insurer told plaintiff that it did not believe plaintiff's loss to be covered under the policy, but that it would agree to pay the claim should plaintiff be found legally liable to Weiss for the loss. However, Weiss never brought an action against plaintiff and at no time did the insurer refuse to defend should any such action be brought. Since the insurer never refused to defend, no release occurred. A release cannot be predicated solely upon the insurer's denial of liability.

While plaintiff might argue that his settlement with Weiss would not bar the claims based upon detrimental reliance and negligence although settlement clearly bars a claim on the insurance policy itself, we would reject any such contention. Concededly, plaintiff may have been misled through the negligence of the company's agents and may have relied to his detriment upon statements of those agents as to the existence of coverage in the instant case.[3] However, the extent of the negligence or detrimental reliance is not so broad as to entitle plaintiff to disregard the adjustment and option to defend provisions of the policy. Plaintiff never was misled as to the adjustment and option to defend provisions of the policy; any negligence or detrimental reliance effected only the inclusiveness of the policy. At all times plaintiff should have been fully aware that for defendants to be liable either under the express terms of the policy or under negligence or detrimental reliance theories, pursuant

---

[3] See, generally, *Hardt* v. *Brink* (WD Wash, 1961), 192 F Supp 879.

to policy provisions, plaintiff could not settle without the insurer's consent. Since plaintiff settled with Weiss for the full amount of the claim, knowing that the company requested a legal determination of liability, plaintiff cannot seek recovery from defendant.

Affirmed. Costs to defendants.

All concurred.