COIL ANODIZERS, INC v WOLVERINE INSURANCE COMPANY

Docket No. 58306. Submitted June 30, 1982, at Grand Rapids.—Decided October 5, 1982.

Coil Anodizers, Inc., brought an action seeking payment from its insurer, Wolverine Insurance Company, now known as Transamerica Insurance Company of Michigan, for a claim which Coil Anodizers voluntarily paid. The Muskegon Circuit Court, James M. Graves, Jr., J., granted defendant's motion for summary judgment on the basis that the facts and pleadings presented no genuine issue of material fact and defendant was entitled to judgment as a matter of law. Coil Anodizers had voluntarily settled prior to the institution of any legal action a claim based upon its failure to properly anodize certain aluminum sheet. Wolverine had denied liability and refused to aid in the investigation of the claim. The policy of insurance prohibited the insured, except at its own cost, from voluntarily paying any claim and required, as a condition precedent to insurer liability, that there be a judgment against the insured following a trial or a written agreement to which the insurer was a party. Plaintiff appeals. *Held:*

1. Plaintiff's voluntary settlement prior to the institution of any legal action on the underlying claim excused defendant insurer from any liability on that claim, such settlement being in clear violation of the unambiguous terms of the insurance contract.

2. The defendant's denial of liability and refusal to aid in the investigation of the claim did not constitute a waiver of any of the provisions of the insurance contract. Waiver of the contractual provisions would require a showing of not only a denial of liability but also a refusal to defend an action brought against the insured. Since no action was brought and thus there was no refusal to defend, there was no waiver of the provisions of the insurance contract.

3. The trial court properly granted summary judgment in favor of defendant.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 44 Am Jur 2d, Insurance § 1393.
[2] 44 Am Jur 2d, Insurance § 1405 *et seq.*

1. INSURANCE — VOLUNTARY SETTLEMENT BY INSURED — LIABILITY OF INSURER.

A voluntary settlement prior to the institution of a legal action of a claim brought against an insured without the concurrence in or approval of such settlement by the insurer absolves the insurer of any liability with respect to that claim and settlement where the insurance policy unambiguously provides that the insured shall not make any voluntary payment or settlement and the liability of the insurer is preconditioned upon a judicial determination of liability after a trial or upon a written agreement of the insured, the claimant and the insurer.

2. INSURANCE — WAIVER OF INSURANCE CONTRACT PROVISIONS — LIABILITY OF INSURER.

Waiver of a provision in an insurance policy on the basis that the insurer refused to undertake the defense of a claim requires a showing that the insurer both denied liability and refused to defend an action brought against the insured; waiver is not shown where the insurer denied liability and refused to aid the insured in the investigation of the claim but no action was brought against the insured prior to a voluntary settlement of the claim by the insured.

*Landman, Luyendyk, Latimer, Clink & Robb* (by *Jon D. Vander Ploeg*), for plaintiff.

*Dilley, Dewey & Waddell, P.C.* (by *Jonathan S. Damon*), for defendant.

Before: M. J. KELLY, P.J., and R. M. MAHER and R. L. TAHVONEN,* JJ.

R. L. TAHVONEN, J. Plaintiff appeals the trial court's granting of summary judgment, GCR 1963, 117.2(3), to defendant. The trial court held that, on the basis of the facts and pleadings before the trial court, there was no genuine issue of any material fact and defendant was entitled to judgment as a matter of law. We affirm.

Plaintiff is engaged in the business of anodizing

---

* Circuit judge, sitting on the Court of Appeals by assignment.

aluminum, a process by which a finish is applied to previously produced aluminum sheet metal. For several years, plaintiff anodized aluminum for Prime Metals, which in turn sold the treated aluminum to Avion Coach Corporation for incorporation into Avion's trailers and motor coaches. In 1978, some of the aluminum treated by plaintiff developed a marked yellowing, because a defect in the salt used in the anodization process caused a chemical reaction upon exposure to sunlight. Needless to say, Avion was distressed at the jaundice which its lustrous silver trailers developed and informed its supplier, Prime, that the aluminum was unacceptable and would have to be replaced. Prime, in turn, informed plaintiff that it would hold plaintiff financially responsible for the cost of replacing the defective aluminum. Plaintiff agreed that its anodization treatment had caused the damages and agreed to settle the matter by having Avion set off its accounts payable to Prime and Prime set off its accounts payable to plaintiff.

When plaintiff first learned it would be held responsible for the damages, it informed its insurance carrier, defendant, of the claim; however, defendant denied liability and refused to aid plaintiff in investigating the claim. Consequently, plaintiff agreed to the aforementioned settlement with its customers. No lawsuits of any kind were ever initiated by plaintiff against Avion or Prime, or by either Prime or Avion against plaintiff. In his affidavit, plaintiff's president alleged that defendant refused "to investigate said claim or undertake any defense of Coil Anodizers, Inc."

The insurance contract issued by defendant provides in pertinent part:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated

to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence. The company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage * * * and may make such investigation and settlement of any claim or suit as it deems expedient."

Two other contract provisions are pertinent to this dispute. Paragraph B(c) is a condition precedent to liability and provides:

"The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation, or incur any expense other than for first aid to others at the time of occurrence."

Paragraph C, also a condition precedent, provides:

"No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have finally been determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant, and the company."

Since it is undisputed that formal proceedings were never begun and defendant never formally acquiesced in the settlement arrangement, the trial judge held that plaintiff was not "legally obligated" for the damages incurred by Prime and Avion, and that its setoff arrangement constituted a "voluntary payment" excusing defendant from liability under the insurance contract. The trial judge also held that defendant had not waived the "no action" clause so as to excuse plaintiff's noncompliance with it, since defendant had merely denied liability and refused to investigate but had

not refused to defend an existing action brought against plaintiff on the claim.

The term "legally obligated" has not been construed by this Court or by the Supreme Court. Relying on *Giffels v Home Ins Co,* 19 Mich App 146; 172 NW2d 540 (1969), and *MacDonald v State Farm Mutual Automobile Ins Co,* 14 Mich App 408; 165 NW2d 665 (1968), the trial court found this term to mean an obligation established by judicial proceedings or by formal acquiescence of the insurer to the payment obligation. In *Giffels* the Court upheld the trial court's finding that an insurer was not liable pursuant to a policy which provided that "the insurer shall be liable for the property of others * * * for which the assured may be liable". The trial court found that the plaintiff-insured's voluntary issuance of a trade acceptance to a party damaged by the plaintiff's business practices denied the insurer an opportunity to adjust the loss with the damaged party. The voluntary settlement, made without attempting to secure a determination of legal liability, precluded the plaintiff from recovering from the insurer.

Although these cases imply that the term "legal obligation" requires either a judicial determination of liability or a settlement between the insurer, insured and the claimant, neither case expressly defines the term.

Notwithstanding the failure of any party to this dispute to obtain a judgment or initiate any formal proceedings, plaintiff contends that it incurred a "legal obligation" since, plaintiff argues, the Michigan Uniform Commercial Code, MCL 440.1101 *et seq.;* MSA 19.1101 *et seq.,* entitled Avion and Prime, as aggrieved buyers, to recoup their damages by setoff against accounts payable. Since we

affirm on other grounds, we do not address the question whether a voluntary setoff agreed to by an aggrieved buyer and his seller under appropriate UCC provisions constitutes a "legal obligation". However, we do question the applicability of the UCC to this case. Generally, the UCC applies only to transactions in goods. *Lorenz Supply Co v American Standard, Inc,* 100 Mich App 600, 607; 300 NW2d 335 (1980). Plaintiff's anodization process may more properly be characterized as a service than a transaction in goods.

We affirm summary judgment for defendant because of plaintiff's noncompliance with the unambiguous conditions of liability quoted above in paragraphs B(c) and C. The language of the contract's "no action" clause clearly contemplates that the insured's liability to the claimant shall first be fixed by formal judgment or be formally acquiesced in by defendant as a condition precedent to recovery. Neither a judgment nor formal consent in the three-way setoff between plaintiff, Prime, and Avion was obtained here. Accordingly, plaintiff's settlement with Prime and Avion effectively excused defendant from liability. That plaintiff may have felt a certain "compulsion" to settle in order to retain the good will of its customers does not render the settlement any less voluntary for purposes of paragraphs B(c) and C of the contract; defendant has bargained for the contractual right to contest the liability of its insured instead of having its money given away by an agreement to which it was not a party. As noted in *Giffels, supra,* p 151, clauses are usually found in liability insurance policies giving the insurer the right to defend and settle any claim made against its insured and prohibiting the insured from voluntarily settling any claims without the insurer's

consent. The purpose of such clauses is to prevent collusion between the claimant and the insured and to give the insurer control over settlement negotiations. In this case, plaintiff's interest in retaining the good will of its customers may have led it to settle, believing the claim to be insured, for a larger amount than defendant may have been able to obtain had defendant conducted the negotiations. In fact, defendant did not even believe the claim to be covered, since it denied liability when plaintiff first notified it.

The trial court was also correct in ruling that the allegation that defendant had refused to "undertake any defense" did not establish waiver of the "no action" clause. To show waiver, an insured must show that the insurer both denied liability *and* refused to defend an *action* brought against the insured. *Elliott v Casualty Ass'n of America,* 254 Mich 282; 236 NW 782 (1931); *Stephens v Pennsylvania Casualty Co,* 135 Mich 189; 97 NW 686 (1903). The undisputed facts show that no lawsuit was ever brought against plaintiff.

Affirmed, costs to appellee.