*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HOME-OWNERS INSURANCE COMPANY,

      Plaintiff-Appellee/Cross-Appellant,

v

AMCO INSURANCE COMPANY,

      Defendant-Appellant/Cross-Appellee.

UNPUBLISHED
January 19, 2023

No. 357273
Kent Circuit Court
LC No. 16-011903-CB

Before: RIORDAN, P.J., and MARKEY and REDFORD, JJ.

PER CURIAM.

In this dispute between insurers over the settlement of an underlying tort case, plaintiff-appellee/cross-appellant, Home-Owners Insurance Company, and defendant-appellant/cross-appellee, AMCO Insurance Company, appeal by leave granted the trial court's order denying their cross-motions for summary disposition. The trial court determined that there was a question of fact with respect to whether Home-Owners could enforce no-action clauses in policies that it sold to its insured to bar AMCO's claim that Home-Owners had to reimburse AMCO for a settlement payment. The primary dispute on appeal is whether Home-Owners waived its right to assert the no-action clauses by breaching its duty to defend. We conclude that AMCO is entitled to reimbursement, but only to the extent that the settlement payment was reasonable and made in good faith, which determination must be resolved in the trial court. Accordingly, we reverse and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

In October 2015, Benjamin Stewart—who was 16 years of age at the time—wrecked his car in an accident. After that accident, Benjamin's father, Christopher Stewart,[1] had Benjamin's car towed to Kool Chevrolet. Christopher rented a 2007 Chevrolet Impala from Kool Chevrolet for Benjamin's use while Benjamin's car was being evaluated for repairs. Christopher testified that he did not read the back of the rental agreement, which had an age requirement of 21 to be an

---

[1] For ease of reference, we shall refer to Benjamin and Christopher Stewart by their first names.

authorized driver. A couple days after renting the 2007 Impala, Benjamin took the car and drove through a stop sign at a high rate of speed. He collided with two other motor vehicles and severely injured one of the other drivers, Jerry Wineland.

At the time of the accident, Christopher insured his family's motor vehicles with Home-Owners. The Home-Owners no-fault policy had a residual liability limit of $500,000. Christopher also purchased an umbrella policy from Home-Owners with a $1 million limit. Kool Chevrolet insured its fleet of motor vehicles with AMCO under a garage policy with a residual liability limit of $1 million. Kool Chevrolet also had an umbrella policy from AMCO with a $10 million limit.

In August 2016, Wineland and his wife sued Benjamin, through his next friend, and Kool Chevrolet. Home-Owners hired attorney Peter Bosch to represent Benjamin in the underlying tort case. In December 2016, Home-Owners sued AMCO in this case. Home-Owners alleged that AMCO illegally attempted to exclude Benjamin and Christopher from the mandatory no-fault coverage under the garage policy that it issued to Kool Chevrolet. Home-Owners stated that it had tendered a defense for Benjamin and Christopher because AMCO refused to do so. It asked the trial court to declare that AMCO was the insurer responsible for liability coverage.

AMCO and Home-Owners moved for summary disposition on the issues of coverage and priority. The trial court held a hearing on the motions in November 2017, and it entered an opinion and order on February 8, 2018. In its February 2018 opinion and order, the trial court declared that AMCO's garage policy covered Benjamin and that AMCO was the primary insurer, responsible for the first $1 million in liability coverage. The trial court also ruled that "AMCO has a duty to defend Benjamin." In April 2018, the trial court denied AMCO's motion for reconsideration. Thereafter, the parties again filed cross-motions for summary disposition. These motions concerned identifying insurer priority with respect to additional layers of coverage upon exhaustion, should it occur, of AMCO's $1 million liability coverage under the garage policy. In December 2018, the trial court ruled that the second layer of liability coverage would come from Home-Owners' $500,000 liability policy. The trial court ordered that the third layer of coverage, should the first two policies be exhausted, would come from Home-Owner's umbrella policy with a coverage limit of $1 million. Finally, the trial court ruled that, if necessary to reach it, the fourth layer of coverage would come from AMCO's $10 million umbrella policy. In January 2019, AMCO appealed to this Court the trial court's decision that AMCO was the primary insurer. At no time in either the lower court and in this Court was the case stayed.

While the appeal in this case was pending, the litigation in the underlying tort case continued. AMCO participated in settlement negotiations with the Winelands's lawyer. In April 2019, after Home-Owners refused to enter into an agreement with AMCO to fund a settlement, AMCO decided to settle the claims against Benjamin and Kool Chevrolet for its $1 million limit on the garage policy. We shall discuss in greater detail below the nature of the interactions and communications between Home-Owners and AMCO with respect to settlement and Benjamin's defense. AMCO settled the Winelands' claims against Benjamin for $980,000

and the claims against Kool Chevrolet for $20,000.[2]  In June 2020, this Court reversed the trial court's opinion and order of February 2018.  *Home-Owners Ins Co v Nationwide Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued June 25, 2020 (Docket No. 347089).  The panel determined that AMCO's garage policy did not cover Benjamin, thereby making Home-Owners the primary insurer.  Unpub op at 6-7.

In September 2020, Home-Owners filed a second amended and supplemental complaint. Home-Owners asserted that under the facts of this case, it had no obligation to reimburse AMCO for the $980,000 settlement payment that AMCO made on behalf of Benjamin.  Specifically, Home-Owners alleged four counts for declaratory relief.  Home-Owners asked the trial court to declare that its no-action clauses barred AMCO from recouping the settlement payment from Home-Owners (Count I).  Home-Owners also requested that the court declare that AMCO had no legal (Count II) or equitable (Count III) rights of subrogation.  Finally, Home-Owners asked the trial court to declare, in the alternative, that AMCO's settlement was unreasonable and excessive (Count IV).

AMCO filed a counterclaim against Home-Owners a few days later.  AMCO alleged that after the trial court's decision that AMCO was the primary insurer, Home-Owners effectively abandoned Benjamin's defense.  As a result, according to AMCO, it had the right to settle the case and hold Home-Owners liable for the settlement payment.  AMCO characterized the settlement agreement as fair and reasonable.  AMCO requested entry of a judgment in its favor and against Home-Owners for the full amount of the $980,000 settlement payment made to the Winelands on behalf of Benjamin.

Home-Owners moved for summary disposition under MCR 2.116(C)(10) in October 2020. Home-Owners argued that the undisputed evidence showed that it tendered a defense to Benjamin, including the period after the trial court ruled in February 2018 that AMCO was the primary insurer and responsible for his defense; consequently, Home-Owners did not waive its no-action clauses, which served as a complete bar to AMCO's request for reimbursement.  AMCO also moved for summary disposition under MCR 2.116(C)(10).  AMCO contended that the evidence demonstrated that it had acted in good faith and not as a volunteer when it settled the underlying tort claims.  In contrast, according to AMCO, Home-Owners effectively abandoned Benjamin after the trial court granted summary disposition in favor of Home-Owners in February 2018.  AMCO also argued that the facts of the underlying tort case established that the $980,000 settlement with the Winelands was just and reasonable given the severity of the injuries and Benjamin's aggravated negligence in causing the crash.  AMCO asked the trial court to order Home-Owners, as a matter of law, to reimburse it for the settlement payment of $980,000.

The trial court held a hearing on the cross-motions for summary disposition in December 2020 and ultimately determined that there were questions of fact that precluded granting either motion.  In its opinion and order of March 2021, the trial court explained that there was

---

[2] Kool Chevrolet obtained an indemnity judgment against Christopher with respect to the $20,000 amount, which Home-Owners later paid to AMCO and Kool Chevrolet.  Consequently, the $20,000 portion of the settlement agreement is not in dispute.

evidence that Home-Owners initially shouldered the burden of Benjamin's defense. But the court also noted that there was evidence that Home-Owners had left AMCO on an "island with respect to settlement" of the underlying tort case after the trial court's order of February 2018 granting summary disposition to Home-Owners. The court therefore determined that there were questions of fact concerning whether Home-Owners had abandoned Benjamin's defense.

Following the trial court's denial of AMCO's motion for reconsideration in May 2021, AMCO filed an application for leave to appeal in this Court. After first denying the application,[3] this Court, on reconsideration, granted leave to appeal. *Home-Owners Ins Co v AMCO Ins Co*, unpublished order of the Court of Appeals, entered October 22, 2021 (Docket No. 357273).

## II. ANALYSIS

### A. OVERVIEW OF APPELLATE ARGUMENTS

On appeal, both AMCO and Home-Owners argue that the trial court erred as a matter of law when it determined that there was a question of fact that precluded a grant of summary disposition. AMCO argues that the undisputed evidence showed that Home-Owners waived its right to assert its no-action clauses by abandoning Benjamin's defense after February 2018. And Home-Owners contends that the undisputed evidence demonstrated that it continued to defend Benjamin and did not waive its no-action clauses, which barred AMCO's right to reimbursement.

### B. STANDARD OF REVIEW

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). We also review de novo questions concerning the interpretation and application of a statute. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). This Court similarly reviews de novo the proper interpretation and application of an insurance contract. *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999).

### C. SUMMARY DISPOSITION PRINCIPLES

MCR 2.116(C)(10) provides that summary disposition is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A motion brought pursuant to MCR 2.116(C)(10) tests the factual support for a party's action. *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). "Affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion are required . . . when judgment is sought based on subrule (C)(10)," MCR 2.116(G)(3)(b), and such evidence, along with the pleadings, must be considered by the court when ruling on the (C)(10) motion, MCR 2.116(G)(5). "When a motion under subrule (C)(10) is made and supported . . ., an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or

---

[3] *Home-Owners Ins Co v AMCO Ins Co*, unpublished order of the Court of Appeals, entered August 31, 2021 (Docket No. 357273).

as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4).

"A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact." *Pioneer State*, 301 Mich App at 377. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). *Pioneer State*, 301 Mich App at 377. "Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994). "[S]peculation is insufficient to create an issue of fact." *MEEMIC Ins Co v DTE Energy Co*, 292 Mich App 278, 282; 807 NW2d 407 (2011). A court may only consider substantively admissible evidence actually proffered by the parties when ruling on the motion. *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999); see also MCR 2.116(G)(6).

## D. DISCUSSION AND RESOLUTION

This case presents unusual circumstances that make it difficult to neatly apply controlling legal principles. The no-fault policy that Home-Owners sold to Christopher contained the following no-action clause:

> No legal action may be brought against [Home-Owners] until there has been full compliance with all the terms of this policy. Further, under the Liability Coverage no legal action may be brought until [Home-Owners] agree[s] a person entitled to coverage has an obligation to pay or until the amount of that obligation has been determined by judgment after trial. No one has any right under this policy to bring [Home-Owners] into any action to determine the liability of any person [Home-Owners has] agreed to protect.

There was a substantially similar provision in the umbrella policy that Home-Owners had sold to Christopher.

As noted earlier, while the trial court's decision in February 2018 to grant summary disposition in favor of Home-Owners was pending on appeal in this Court, the litigation in the underlying tort case continued. Even though the trial court had declared that AMCO was responsible for defending Benjamin and had primary responsibility to provide liability coverage, AMCO did not take steps to replace attorney Bosch or to assert a right to direct Bosch's handling of Benjamin's defense. AMCO did, however, negotiate with the lawyer for the Winelands about a settlement.

## 1. SETTLEMENT NEGOTIATIONS

AMCO presented an affidavit of its commercial claims specialist, Lisa Kiessling, to establish facts with respect to the settlement negotiations. Kiessling averred that she attended a settlement conference that the trial court held in the underlying tort case on June 6, 2018. She asserted that she spoke to Home-Owners' claims representative, Cathy Stombaugh, about AMCO's desire to settle, but Stombaugh did not offer to contribute any money to AMCO's proposed settlement. Kiessling negotiated with the Winelands' lawyer, and their lawyer told Kiessling that the Winelands would not settle for less than the $920,000 case evaluation award. She further averred that the trial court in the underlying tort case had set the matter for trial, scheduling it for April 29, 2019.[4] Kiessling indicated that she called Stombaugh and left voicemail messages in June and July 2018 in which she asked if Home-Owners would contribute to a settlement. Kiessling contended that she received no response.

Kiessling e-mailed Stombaugh about the matter in December 2018. According to Kiessling, Stombaugh acknowledged her communication, and Kiessling then proposed that Home-Owners agree to pay 50% of any settlement. Kiessling also offered a deal pursuant to which the prevailing party in the declaratory action would have the right to reimbursement. Kiessling averred that Stombaugh did not respond to these particular offers. After Kiessling sent further e-mails asking for Home-Owners' position, Stombaugh finally answered in January 2019. According to Kiessling, Stombaugh stated that Home-Owners would not agree to a 50-50 funding arrangement for any settlement. Kiessling further averred that Stombaugh reiterated that stance in February 2019, while also clarifying that Home-Owners would not be willing to contribute *any* amount to a settlement.

In a letter dated March 28, 2019, AMCO's lawyer contacted Home-Owners' lawyer in the declaratory action and expressed his belief that AMCO was going to prevail on its then pending appeal in this Court. He further stated that AMCO proposed to settle the claims for a total of $1 million. AMCO's counsel indicated his belief that Home-Owners would end up being responsible for reimbursing AMCO should AMCO settle the underlying tort case. He then "requested" that Home-Owners inform him by "April 5, 2019" regarding whether it would agree "to provide coverage and a defense to Benjamin . . . pursuant to the Home-Owners' [policies] . . . ." AMCO's attorney also asked whether Home-Owners would "settle the Wineland case and/or defend Benjamin . . . to the extent of the coverage provided by the Home-Owners' policies." Counsel expressed that if Home-Owners refused the proposal, AMCO would settle the case. And he opined that AMCO's settlement would be "binding on Home-Owners."

Kiessling averred that Home-Owners failed to respond to the letter by AMCO's deadline, so she settled with the Winelands on behalf of Benjamin and Kool Chevrolet on April 9, 2019. She stated that AMCO paid $980,000 to settle the claims against Benjamin and paid $20,000 to settle the claims against Kool Chevrolet.

---

[4] The register of actions for the underlying tort litigation reflects that the April 29, 2019 trial date was scheduled in June of 2018.

## 2. ATTORNEY BOSCH'S DEFENSE OF BENJAMIN

In this case, the undisputed evidence revealed that Home-Owners hired Bosch to defend Benjamin and paid all the costs associated with Benjamin's defense. Bosch continued as Benjamin's counsel of record in the underlying litigation after the trial court determined in February 2018 that AMCO was the primary insurer and had the duty to defend Benjamin. In an affidavit, Bosch averred that in January 2018 he reported to a Home-Owners' adjuster "that the lawsuit had a settlement value of around $250,000 and at most $500,000." Bosch indicated that when the Winelands's lawsuit was scheduled for trial, he was prepared to try the case. Bosch further averred that Home-Owners never directed him to withdraw Benjamin's defense, that AMCO never offered to pay or paid bills associated with Bosch's defense of Benjamin, that AMCO never appointed an attorney to appear in the suit against Benjamin, that he was notified on April 9, 2019, about the settlement, that Bosch was never consulted by AMCO before the settlement about the case's settlement value, and that Bosch would have recommended against any settlement "in excess of $500,000." Bosch added that AMCO's liability settlement payment on behalf of Benjamin "exceeded a reasonable settlement range of $200,000 to $500,000." Bosch emphasized that he "was ready, willing and able to try the liability . . . lawsuit against Benjamin . . . and defend his interests pursuant to the defense appointment by Home-Owners . . . which had never been withdrawn[.]" On review of the register of actions relative to the underlying tort action, it appears that the only proceeding following the February 2018 ruling against AMCO and before the settlement took place in April 2019 was a settlement conference in June 2018.

## 3. GOVERNING LEGAL PRINCIPLES

Our Supreme Court has long held that no-action clauses are enforceable unless the insurer breached its duty to defend. See *Elliott v Cas Ass'n of America*, 254 Mich 282, 287-289; 236 NW 782 (1931). This Court succinctly explained the policy behind no-action clauses and the rule that such clauses are waived when the insurer breaches its duty to defend an insured:

> Clauses prohibiting the insured from voluntarily settling a claim without the insurer's consent give the insurer the opportunity to contest liability, to participate in settlement negotiations and to have input as to the value of the claim. When an insurer breaches its own policy of insurance by refusing to fulfil its duty to defend the insured, the insurer is bound by any reasonable settlement entered into in good faith between the insured and the third party. An insured is released from any agreement not to settle without the insurer's consent where the insurer has denied liability and wrongfully refused to defend. Upon notice, there is some burden on the insurer to act to protect its interests or those of its insured. The insurance carrier will not be permitted to benefit by sitting idly by, knowing of the litigation, and watching its insured become prejudiced. [*Alyas v Gillard*, 180 Mich App 154, 160; 446 NW2d 610 (1989) (citations omitted).]

Unless an insurer waives the right to assert a no-action clause by breaching its duty to defend, an insured's decision to settle without obtaining the agreement of the insurer relieves the insurer of the obligation to pay. See *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 468; 761 NW2d 846 (2008). To constitute a valid waiver of the no-action clause, the insurer must both wrongfully deny that it is liable for the claims against the insured and refuse to defend an

-7-

action that has been brought against the insured. *Coil Anodizers, Inc v Wolverine Ins Co*, 120 Mich App 118, 124; 327 NW2d 416 (1982). The insurer does not have to prove that the insured's actions prejudiced the insurer before it can assert a no-action clause as a defense to reimbursing the insured for the settlement. See *Tenneco*, 281 Mich App at 468-471.

An insurer normally satisfies its duty to defend by hiring a lawyer to represent its insured and paying the costs associated with the defense. See, e.g., *Stockdale v Jamison*, 416 Mich 217, 224-227; 330 NW2d 389 (1982) (holding that, when an insurer breaches its contractual obligation to defend its insured, the insurer is liable to the insured for all the costs associated with the insured's defense should it later be determined that the failure to defend breached the contract). An insurer can also meet its obligation by settling with a claimant. See *Elliott*, 254 Mich at 287. But an insurer is not required to settle a case to meet its duty to defend. See *Stockdale*, 416 Mich at 224 ("A failure on the part of the insurer to settle is not necessarily unreasonable or actionable. The law does not require the insurer to settle every case. If the insurer acts in good faith, it is protected."); see also *Giffels v The Home Ins Co*, 19 Mich App 146, 152; 172 NW2d 540 (1969).

"It is settled that the insurer's duty to defend the insured is measured by the allegation in plaintiff's pleading[,]" and "[t]he duty to defend does not depend upon insurer's liability to pay." *Guerdon Indus, Inc v Fidelity & Cas Co of New York*, 371 Mich 12, 18; 123 NW2d 143 (1963); see also *Polkow v Citizens Ins Co of America*, 438 Mich 174, 180; 476 NW2d 382 (1991) ("The insurer's duty to provide a defense extends to allegations which even arguably come within the policy coverage."). "When an insurer relies on a lower court ruling that it has no duty to defend, it takes the risk that the ruling will be reversed on appeal[,]" and a "lower court ruling that [there is] no duty to defend does not make the principles set forth in *Elliott*[5] any less applicable[.]" *Detroit Edison Co v Mich Mut Ins Co*, 102 Mich App 136, 146; 301 NW2d 832 (1981).

"Where the status of the primary insurer is clear, as in . . . single car accident cases, the primary insurer is liable for the defense and its costs until its limit is paid." *Frankenmuth Mut Ins Co, Inc v Continental Ins Co*, 450 Mich 429, 437; 537 NW2d 879 (1995). And "[a]dditional insurers who by the terms of their policies also cover some loss arising from the single car accident are coincidental excess insurers[,]" whose "duty . . . may vary depending on the terms of their policies." *Id.* at 437-438.

## 4. APPLICATION OF FACTS TO LAW

The ultimate issue in this case is whether Home-Owners must reimburse AMCO for the $980,000 settlement payment that AMCO made to the Winelands on behalf of Benjamin in the underlying tort suit. In resolving this appeal, we think it important to view the case in the procedural posture in which the parties found themselves when making decisions and taking actions in relation to the tort litigation. Also, in conducting our analysis, we keep in mind that this Court held in the previous appeal that AMCO had no obligation or liability whatsoever to provide

---

[5] As noted earlier, the *Elliott* Court observed that no-action clauses are enforceable unless the insurer breached its duty to defend. *Elliott*, 254 Mich at 287-289.

insurance coverage in connection with Benjamin's alleged negligence in the motor vehicle accident.

After the trial court ruled in February 2018 that AMCO was the primary insurer and had a duty to defend, the parties took two divergent paths, both of which, however, could be characterized as being in defense of Benjamin. Attorney Bosch, working for Home-Owners, continued to represent Benjamin in the tort action, even though there was little to do at this stage of the litigation. At the same time, AMCO was engaging in negotiations with the Winelands on behalf of Benjamin. Under the trial court's rulings, Home-Owners became the excess insurer and AMCO became the primary insurer, giving AMCO the controlling authority to decide whether to settle the case for the $980,000 amount under AMCO's $1 million garage policy or go to trial. We do note that because the trial court was later reversed by this Court, Home-Owners should have been in the position of sole insurer and defender. Home-Owners apparently accepts the premise that under the terms of its policies it had a duty to defend Benjamin following the February 2018 decision by the trial court, even if simply as an excess insurer. See *Frankenmuth Mut Ins Co*, 450 Mich at 437-438. Indeed, in respect to having a duty to provide a defense, Home-Owners also had to be operating with full knowledge of the risk that the trial court's determinations that AMCO was the primary insurer and had a duty to defend could be reversed on appeal. That is exactly what occurred here. See *Detroit Edison Co*, 102 Mich App at 146.

We tend to believe that Home-Owners did not breach its duty to defend under the documentary evidence presented to the trial court. While AMCO focuses on Home-Owners' failure to respond to the March 28, 2019 letter sent by AMCO's attorney, the letter, when closely scrutinized, essentially demanded that Home-Owners proceed under its insurance policies as if it were the primary insurer, contrary to the trial court's February 2018 ruling. And although Home-Owners did not respond to AMCO's demand that Home-Owners indicate whether it intended to provide a defense for Benjamin, this did not mean that Home-Owners was not actually defending Benjamin. In fact, there was nothing to undermine or contradict Bosch's averments in his affidavit that he was ready and willing to go to trial on the belief that the Winelands's damages amounted to $500,000 at most. Home-Owners did not attempt to withdraw its authorization for Bosch to continue his representation of Benjamin in the tort litigation, and AMCO made no attempt to insert or substitute its own attorney into the tort suit.[6] Nevertheless, we do not find that determining whether Home-Owners waived the no-action clauses by failing to comply with its duty to defend is the relevant inquiry in this case.

We conclude that the no-action clauses were not enforceable under the particular circumstances of this case; therefore, the question whether Home-Owners complied with its duty to defend need not be reached. But we do not leave Home-Owners unprotected and without

---

[6] We note that an "attorney's appearance applies . . . in the court in which it is made . . . until a final judgment or final order is entered disposing of all claims by or against the party whom the attorney represents," MCR 2.117(C)(1), and that, in general, "an attorney who has entered an appearance may withdraw from the action or be substituted for only on order of the court," MCR 2.117(C)(2). Bosch remained Benjamin's counsel of record in the tort litigation through settlement.

recourse. As indicated earlier, no-action "[c]lauses prohibiting the insured from voluntarily settling a claim without the insurer's consent give the insurer the opportunity to contest liability, to participate in settlement negotiations and to have input as to the value of the claim." *Alyas*, 180 Mich App at 160. With respect to the procedural posture of this case at the time of settlement, AMCO had been designated the primary insurer, was ordered to provide a defense to Benjamin, and had decided to settle the tort litigation for an amount that did not exceed its own $1 million garage policy. Under these specific circumstances, we question the need for Benjamin to obtain Home-Owners' agreement for the settlement with the Winelands, which was to be fully funded by AMCO. The purposes of a no-action clause did not need to be served at the time. It is not as if Benjamin, in disregard of Home-Owners' contractual rights, struck his own deal with counsel for the Winelands and then demanded payment by Home-Owners. In regard to the settlement negotiations between the Winelands and AMCO, a determination mandating Home-Owners' involvement and agreement would seem counterintuitive considering that Home-Owners had no liability within the immediate context of the settlement. But looming on the horizon was AMCO's pending appeal and the possibility that Home-Owners could be declared the primary or sole liability insurer. This Court's reversal of the February 2018 ruling by the trial court creates the difficulty in resolving this case. But this Court also notes that the parties sought no stay in the trial court and, in not doing so, assumed the risk that a decision in this Court could completely change the parties' positions.

Looking at the specific language of the no-action clauses contained in the Home-Owners' insurance policies, we believe they can be reasonably construed as absolutely requiring Home-Owners' agreement to a settlement payment before AMCO would be entitled to file an action against Home-Owners under subrogation principles. Under the reasoning employed by Home-Owners, an action by AMCO seeking recovery in the form of reimbursement would only be viable under the no-action clauses if Home-Owners had approved the $980,000 settlement. In our view, this reasoning creates tension between insurers that results in a detriment to the insured and the injured claimant, making settlement much less likely and creating an environment ripe for gamesmanship. In this case, Home-Owners had no reason, for the most part, to agree to the settlement because if it had been victorious in the earlier appeal, it would have no liability, yet if it lost the earlier appeal, as occurred, it would still have no liability given that the subrogation action could not be maintained in light of the no-action clauses.

Importantly, we acknowledge that our ruling does not honor the contractual no-action clauses in Home-Owners' insurance policies, but we emphasize that a ruling in favor of Home-Owners and enforcing the no-action clauses results in AMCO's incurring liability in direct contradiction to the plain language of its insurance policies as construed by the previous panel. Indeed, enforcement of the no-action clauses effectively circumvents or nullifies the earlier ruling by this Court. To afford some protection to Home-Owners, we conclude that the proper approach is to reverse the trial court's ruling, declare that AMCO may be entitled to reimbursement, and remand for proceedings to determine the proper reimbursement amount, if any, under criteria measuring whether the $980,000 settlement was reasonable and made by AMCO in good faith. In this way, Home-Owners has the opportunity to attain some of the benefits associated with the no-action clauses.

In *Esurance Prop & Cas Ins Co v Mich Assigned Claims Plan*, 507 Mich 498, 510-511; 968 NW2d 482 (2021), our Supreme Court discussed subrogation in the context of insurance cases, observing:

> Equitable subrogation is a flexible, elastic doctrine of equity. Thus, its application should and must proceed on the case-by-case analysis characteristic of equity jurisprudence. Equitable subrogation is the mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity, and good conscience ought to pay it. Equitable subrogation has been invoked successfully in a variety of circumstances, but the mere fact that it has not been previously invoked in a particular situation is not a prima facie bar to its applicability. This Court has explained that equitable subrogation is a legal fiction through which a person who pays a debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the other. The doctrine has two prongs: the subrogee acquires no greater rights than those possessed by the subrogor, and the subrogee may not be a mere volunteer.
>
> This Court has defined a "volunteer" as one who intrudes himself into a matter which does not concern him, or one who pays the debt of another without request, when he is not legally or morally bound to do so, and when he has no interest to protect in making such payment. But where the person paying the debt has an interest to protect, he is not a stranger. A payment is not voluntary when made under compulsion, in ignorance of the real state of facts, or under an erroneous impression of one's legal duty. When an insurer pays expenses on behalf of its insured pursuant to an insurance contract, it is not doing so as a volunteer. And when an insurer pays a claim that another insurer may be liable for, it is protecting its own interests and not acting as a volunteer, and in that instance, the insurer is entitled to invoke the doctrine of equitable subrogation. Logically, then, an insurer who has at least an arguable duty to pay is clearly not a volunteer. [Quotation marks, citations, brackets, and ellipses omitted.]

In determining an insurer's subrogation rights, insurance payments are not voluntary when an insurer acted in good faith to discharge a disputed obligation, even when it is ultimately determined that its insurance policy did not apply. *Id.* at 516 n 43. Accordingly, in this case and as noted above, there must be a determination whether AMCO acted in good faith in entering into the settlement.

"When an insurer breaches its own policy of insurance by refusing to fulfil its duty to defend the insured, the insurer is bound by any *reasonable* settlement entered into in good faith between the insured and the third party." *Alyas*, 180 Mich App at 160 (emphasis added). Although we are not determining whether Home-Owners breached a duty to defend, we have decided that the no-action clauses are unenforceable, and, by analogy, we conclude that Home-Owners cannot be bound by the AMCO settlement unless it was reasonable.

The trial court never reached the issues whether the $980,000 settlement was made in good faith and whether the amount was reasonable. Ultimately, AMCO's entitlement to contribution from Home-Owners depends on the answers to these two questions.

We reverse and remand for proceedings consistent with this opinion. We do not retain jurisdiction. We decline to tax costs under MCR 7.219.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ James Robert Redford