# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 00-2810

———————

| | | |
|---|---|---|
| Esicorp, Inc.; St. Louis Testing Laboratories, Inc., | * | |
| | * | |
| | * | |
| Plaintiffs - Appellees, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Eastern District of Missouri. |
| | * | |
| Liberty Mutual Insurance Company, | * | |
| | * | |
| Defendant - Appellant. | * | |

———————

Submitted: June 11, 2001

Filed: September 17, 2001

———————

Before LOKEN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and TUNHEIM,* District Judge.

———————

LOKEN, Circuit Judge.

Esicorp, Inc. ("Esicorp"), sued St. Louis Testing Laboratories, Inc. ("SLT"), for losses arising out of the need to repair defective pipe welds that SLT's testing had failed to discover. Liberty Mutual Insurance Company ("Liberty Mutual") refused to defend SLT under the comprehensive general liability ("CGL") policies Liberty Mutual

—————————————

*The HONORABLE JOHN R. TUNHEIM, United States District Judge for the District of Minnesota, sitting by designation.

issued to SLT for the period in question.  SLT settled with Esicorp for $2,125,000, paying $125,000 and satisfying the remainder of its settlement obligation by assigning its rights against Liberty Mutual to Esicorp.  Esicorp then sued Liberty Mutual to recover SLT's agreed liability.

In Esicorp, Inc. v. Liberty Mutual Insurance Co., 193 F.3d 966 (8th Cir. 1999), we agreed with the district court that Liberty Mutual had breached its duty to defend SLT but remanded for a determination of what portion of the settlement was covered by the CGL policy and, if necessary, for an apportionment of the settlement amount between covered and uncovered losses.  On remand, the district court concluded that all of Esicorp's claimed losses were covered by the policy and ordered Liberty Mutual to pay the full settlement amount of $2,125,000, SLT's attorney's fees in the underlying action, and prejudgment interest.  Liberty Mutual appeals.  We conclude that most of Esicorp's claimed losses were not "property damage" covered by the policy and that Liberty Mutual has paid all covered losses.  Accordingly, we reverse.

Esicorp's predecessor, acting as prime contractor, purchased large diameter, welded steel pipe sections from a St. Louis fabricator for a construction project at a California hydroelectric plant.  SLT inspected and approved the welded pipe sections at the fabricator's shop before they were shipped to the project site in California.  On site, the pipe sections were field-welded together to form an integrated pipe system.  When the project was well under way, spot checks revealed defects in the fabricator's shop welds.  The project owner suspended work and required Esicorp to discover and repair defective welds.  Esicorp repaired more than four hundred defective shop welds at the job site, a process that required invasion of pipe sections already integrated into the new pipe system.  Esicorp's damage experts opined that Esicorp incurred losses of more than $3,000,000 as a result of SLT's failure to discover the defective welds in the fabricator's shop in St. Louis.  The losses included substantial repair costs, increased costs of contract performance, and liquidated damages to the project owner because of project delays.

The relevant insuring agreement in Liberty Mutual's CGL policies provided, "We will pay those sums that [SLT] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The sole issue presented on appeal is the extent to which the SLT settlement reimbursed Esicorp for losses that were covered "damages because of . . . 'property damage.'"[1] The policies defined "property damage" as follows:

"Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property; or

b. Loss of use of tangible property that is not physically injured.

The interpretation of an insurance policy is an issue of law we review *de novo*. Esicorp I, 193 F.3d at 969. The parties agree that Missouri law governs. Under Missouri law, the language in an insurance policy is to be given its ordinary meaning unless another meaning is plainly intended. Farmland Indus., Inc. v. Republic Ins. Co., 941 S.W.2d 505, 508 (Mo. banc 1997).

The key policy terms are "damages because of . . . 'property damage'" in the insuring agreement and "physical injury to tangible property" in the definition of property damage. It is significant that the defectively welded pipe sections did not

---

[1]Thus, we do not address other often-litigated issues, such as whether any covered property damage was caused by an "occurrence," and whether it fell under the so-called "business-risk exclusions" in the Liberty Mutual policy. See, e.g., American States Ins. Co. v. Mathis, 974 S.W.2d 647, 649-50 (Mo. App. 1998) (breach of contract requiring repair or replacement not a covered "occurrence"); Tower Ins. Co. v. Minnesota Holstein-Freisan Breeders' Ass'n, 605 N.W.2d 768, 772 (Minn. App. 2000) (liability for loss caused by failure to render sound advice excluded from coverage by the business-risk exclusions).

collapse or burst or otherwise cause accidental injury to surrounding property as a result of SLT's negligent inspection. Compare Scottsdale Ins. Co. v. Ratliff, 927 S.W.2d 531, 533 (Mo. App. 1996) (termite inspector's negligent inspection caused property damage when undetected termites continued to destroy the home). Instead, Esicorp argues that the incorporation of the defectively welded pipe sections into the partially completed pipe system was covered property damage, and therefore all direct and consequential costs resulting from that damage are covered losses. We disagree.

Before 1973, "property damage" in the standard CGL policy was defined as "injury to or destruction of tangible property." Applying that definition, a number of courts held that diminution in the value of a building resulting from the incorporation of a defective component was covered property damage. See Western Cas. & Sur. Co. v. Polar Panel Co., 457 F.2d 957, 960 (8th Cir. 1972), applying Minnesota law and following Hauenstein v. St. Paul-Mercury Indem. Co., 65 N.W.2d 122 (Minn. 1954). This line of cases supports Esicorp's incorporation argument.

However, in 1973, the definition of "property damage" in the standard CGL policy was changed to "*physical* injury to or destruction of tangible property," the language used in the policies here at issue. The Supreme Court of Minnesota and other courts construing this new definition have concluded that the mere incorporation of a defective component is not "property damage" because it does not result in "physical injury." See Federated Mut. Ins. Co. v. Concrete Units, Inc., 363 N.W.2d 751, 756 (Minn. 1985); Wyoming Sawmills, Inc. v. Transportation Ins. Co., 578 P.2d 1253, 1256-57 (Or. 1978). There is one notable decision to the contrary, the Seventh Circuit's divided panel opinion in Eljer Manufacturing, Inc. v. Liberty Mutual Insurance Co., 972 F.2d 805 (7th Cir. 1992), cert. denied, 507 U.S. 1005 (1993). But the Eljer panel applied Illinois law, and Illinois state courts have now expressly rejected Eljer and adopted the majority view of Federated and Wyoming Sawmills. See Travelers Ins. Co. v. Eljer Mfg., Inc., 718 N.E.2d 1032, 1041 (Ill. App. 1999) ("some physical injury to tangible property must be shown in order to trigger coverage"), rev'd

in part on other grounds, 2000 Ill. LEXIS 1712, at *6 (Ill. Dec. 1, 2000) (mere installation of a defective plumbing system is not covered property damage), reh'g granted, 2001 Ill. LEXIS 231 (Ill. Jan. 29, 2001).

Although the Supreme Court of Missouri has not addressed this issue, the Missouri Court of Appeals commented that the integration of defective materials into a home, without more, was not covered property damage in Hawkeye-Security Insurance Co. v. Davis, 6 S.W.3d 419, 426 (Mo. App. 1999). After careful review of this more recent line of cases, we conclude the Supreme Court of Missouri would reject Esicorp's incorporation theory and hold that there is no "property damage" unless and until the incorporation of a defective product or component results in "physical injury to tangible property" in at least some part of the system.[2]

Alternatively, Esicorp argues that there was extensive physical injury to tangible property in this case caused by the work in repairing the defective shop welds in the field -- gouging out and repairing the weld defects, invading and then restoring a high quality epoxy coating on the inside of the pipe sections, severing a neoprene seal, and removing or altering steel rebars and concrete forms already in place. Liberty Mutual concedes that the repair operations caused some "property damage" within the meaning of the policy -- the damage to the epoxy coating, neoprene seal, rebars, and concrete forms incurred because the defective welds had to be repaired at the job site after they had been incorporated into the pipe system, rather than at the fabricator's shop where SLT inspected them. However, Liberty Mutual argues that the majority of Esicorp's

---

[2]In Missouri Terrazzo Co. v. Iowa National Mutual Insurance Co., 740 F.2d 647, 650-52 (8th Cir. 1984), applying Missouri law, we held that a defective terrazzo floor that cracked, settled, and flaked after installation constituted property damage to the entire building. Hawkeye-Security may cast considerable doubt on this decision. But even if Missouri Terrazzo correctly assessed current Missouri law, it is distinguishable because in this case there was no physical injury to the defective pipe sections before they were repaired.

losses did not fall within the insuring agreement because the repairs to the shop welds were not covered injuries.

Liberty Mutual cites some support for this contention. As the Ninth Circuit said in construing the term "physical injury" in New Hampshire Insurance Co. v. Vieira, 930 F.2d 696, 701-02 (9th Cir. 1991), "[i]f the harm -- Vieira's defective work -- is not covered as measured by diminished value [of the end product], it is not covered as measured by cost of repair." Accord Wyoming Sawmills, 578 P.2d at 1256-57 (labor expenses in replacing defective studs are not covered "property damage," but expenses resulting from damage to other parts of the building during the repair process are covered). Likewise, a comment by the Missouri Court of Appeals in Hawkeye-Security -- that the use of inferior construction materials is not, without more, property damage, 6 S.W.2d at 426 -- suggests that the cost of repairing such a defect is not property damage. And most tellingly, Esicorp cites no contrary authority. Indeed, Esicorp's brief on appeal ignored the issue altogether, except to assert in conclusory fashion that all of the repair work was property damage. We conclude that costs of repairing the defective welds were not covered "damages because of . . . 'property damage.'"

In its motion for summary judgment and on appeal, Esicorp took the position that it may recover the entire settlement amount if there was *any* covered property damage. The district court agreed, concluding that all costs incurred in repairing the defective welds, and all consequential damages resulting from the need to repair, may be recovered because there was $11,298 of covered damage to the epoxy coating. As we strongly suggested in Esicorp I, 193 F.3d at 971, we conclude that Missouri law instead limits Esicorp's recovery to that portion of the settlement that reflects SLT's liability for *covered* losses.

It is apparent from Esicorp's damage evidence that the vast bulk of the $3,046,709 loss allegedly attributable to SLT's negligent inspection were the costs of

repairing the defective welds in the field and the consequential damages caused by the need to undertake those repairs. Esicorp made no attempt to apportion either its total loss or the settlement amount between these direct and consequential repair costs, which were not covered property damage, and the direct and consequential costs resulting from the limited damages Liberty Mutual concedes were covered. Esicorp, in suing as assignee of SLT, had the insured's burden to prove that its losses fell within the policy's insuring agreement. Estrin Constr. Co. v. Aetna Cas. & Sur. Co., 612 S.W.2d 413, 419 (Mo. App. 1981). Accordingly, in ruling on the parties' cross motions for summary judgment, the district court erred in not limiting Esicorp's recovery to the damage to the epoxy coating, SLT's attorney's fees in the underlying action, and prejudgment interest on both amounts. As it is undisputed that Liberty Mutual has already paid those amounts, the judgment and amended judgment of the district court are reversed. Appellees' motion to strike is denied.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.