198 F.Supp.2d 1074 (2001)
CINCINNATI INSURANCE COMPANY, Plaintiff,
v.
VENETIAN TERRAZZO, INC., Defendant.
No. 4:01CV726DDN.
United States District Court, E.D. Missouri, Eastern Division.
December 19, 2001.
*1075 Russell F. Watters, Managing Principle, Brown and James, P.C., St. Louis, MO, for Plaintiff.
William B. Smith, Gregory P. May, Dubail Judge, P.C., St. Louis, MO, for Defendant.

MEMORANDUM
NOCE, United States Magistrate Judge.
Before the court is the motion of plaintiff Cincinnati Insurance Company (Cincinnati) for summary judgment (Doc. No. 16). The parties have consented to the exercise of jurisdiction by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). A hearing was held on December 10, 2001.
In this diversity action for declaratory judgment, Cincinnati seeks a declaration that it has no duty to defend its insured, defendant Venetian Terrazzo, Inc. (Venetian), in a law suit against Venetian by a third party, or to indemnify Venetian for damages awarded against it in that suit. The undersigned concludes that Cincinnati is entitled to summary judgment.

UNDISPUTED FACTS
The record establishes the following material facts about which there is no genuine dispute: Venetian is a Missouri corporation in the business of installing terrazzo tile floors. On November 10, 1995, Venetian entered into a subcontract with Brockmiller Construction Co. (Brockmiller) to install terrazzo flooring in Robert A. Dempster Hall at Southeast Missouri State University in Cape Girardeau, Missouri, for $140,684. The parties also executed a Guaranty and Indemnification Agreement in which Venetian guaranteed its performance under the contract and promised to indemnify Brockmiller for all loss Brockmiller may sustain by reason of Venetian's failure to perform.
Venetian completed the installation in the summer of 1996. The university began to experience problems with the terrazzo floor. In April 1999, Brockmiller's liability insurance carrier notified Cincinnati that the university had demanded a full replacement of the floor, and that Brockmiller's carrier intended to seek contribution and subrogation from Cincinnati and Venetian. In March 2001, Brockmiller commenced a judicial action against Venetian in the Circuit Court of Cape Girardeau County, Missouri. Brockmiller alleged that Venetian failed to properly test and prepare the concrete sub-state for installation of the terrazzo tile and that, as a result, the terrazzo floor buckled and had to be redone by another subcontractor at a cost of $127,188.80. Brockmiller sought damages, expenses, costs, and attorney's fees, alleging breach of implied and express warranties to perform the work in a workmanlike manner, negligence, and breach of the guaranty to indemnify Brockmiller against all loss, damages, and expenses sustained as a result of Venetian's failure to properly perform its work. Motion Exh. D, filed September 28, 2001. *1076 Venetian asserted as an affirmative defense that the problems with the floor resulted from another party's negligence in pouring the cement subfloor which did not dry properly.
Cincinnati agreed to provide a defense to Venetian under a reservation of rights. Cincinnati then commenced the present action seeking a declaration that it has no duty to defend or indemnify Venetian under the two insurance policies it issued Venetiana Commercial General Liability Policy and a Contractor's Umbrella Liability Policy. It is undisputed that both policies were in effect during the relevant time.
The Commercial General Liability Policy provides in relevant part:

SECTION ICOVERAGES

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement.
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.
* * * * * * *
b. This insurance applies to "bodily injury" and "property damage" only if
(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and
(2) The "bodily injury" or "property damage" occurs during the policy period.
* * * * * *
See Motion Exh. A at 1 of 11, filed September 28, 2001.

2. Exclusions.
This insurance does not apply to:
* * * * * *
b. "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
(1) Assumed in a contract or agreement that is an "insured contract," provided the . . . "property damage" occurs subsequent to the execution of the contract or agreement; or
(2) That the insured would have in the absence of the contract or agreement.
* * * * * * *
j. "Property damage" to:
* * * * * *
(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed out of it.
* * * * * *
l. "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."
This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.
* * * * * *
Id. at 1 of 113 of 11.

SECTION VDEFINITIONS
6. "Insured contract" means:
* * * * * * *
f. That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another to pay for "bodily injury" or *1077 "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.
* * * * * *
9. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
* * * * * *
11. a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "you work" except:
(1) Products that are still in your physical possession; or
(2) Work that has not yet been completed or abandoned.
* * * * * *
12. "Property damage" means:
a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it; or
b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.
* * * * * *
14. "Your product" means:
a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
(1) You;
(2) Others trading under your name; or
(3) A person or organization whose business or assets you have acquired . . . .
15. "Your work" means:
a. Work or operations performed by you or on your behalf; and
b. Materials, parts or equipment furnished in connection with such work or operations.
"Your work" includes:
a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work;" . . . .
Id. at 8 of 1110 of 11.
The Contractor's Umbrella Liability Policy provides in relevant part:
PART II THE COVERAGE
A. WE WILL PAY
We will pay on behalf of the Insured the ultimate net loss for occurrences during the policy period in excess of the underlying insurance or for occurrences covered by this policy which are either excluded or not covered by underlying insurance because of . . . Property Damage . . . .
See Motion Exh. B at 2 of 7, filed September 28, 2001.
B. THIS POLICY DOES NOT APPLYEXCLUSIONS
This policy does not apply:
* * * * * *
(n) to Personal Injury or Property Damage for liability assumed under contract;
(o) to Property Damage to:
* * * * * *
(3) work performed by or on behalf of the Insured arising out of the work or any portion thereof, or out of materials, parts or equipment *1078 furnished in connection therewith;
* * * * * *
Id. at 2 of 73 of 7.
The Umbrella Policy contains the following relevant definitions:
G. "occurrence" means an accident, or a happening or event, or a continuous or repeated exposure to conditions which occurs during the policy period which unexpectedly or unintentionally results in personal injury, property damage or advertising liability. All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence;
* * * * * *
J. "property damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period;
* * * * * *
Id. at 1 of 72 of 7.

DISCUSSION
It is undisputed that the parties are corporate citizens of different states and that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Therefore, this court has subject matter jurisdiction over the action. 28 U.S.C. § 1332.
Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Callas Enters., Inc. v. The Travelers Ind. Co. of Am., 193 F.3d 952, 955 (8th Cir. 1999); Fed.R.Civ.P. 56(c).
The parties agree that Missouri law provides the applicable rules of decision. Under Missouri law,
[a]n insured has the burden to prove coverage under a policy. The burden rests on the insurer to prove that the loss was within a policy exclusion. The language of an insurance contract is to be given its plain meaning. If a policy is unambiguous it is to be enforced according to its terms, and if ambiguous, it is construed against the insurer.
Christian v. Progressive Cas. Ins. Co., 57 S.W.3d 400, 403 (Mo.Ct.App.2001) (cited cases omitted). A disagreement between the parties as to the meaning of the policy language does not suffice to create an ambiguity. Windsor Ins. Co. v. Lucas, 24 S.W.3d 151, 153 (Mo.Ct.App.2000). A court interpreting an insurance policy must consider the entire policy as a whole. Id.; Hawkeye-Security Ins. Co. v. Davis, 6 S.W.3d 419, 424 (Mo.Ct.App.1999).
Cincinnati argues that it is entitled to summary judgment because the underlying action by Brockmiller does not seek damages for losses arising out of an "occurrence," as that term is defined in the policies. Furthermore, according to Cincinnati, the losses alleged in the Brockmiller suit are specifically excluded by exclusions b, j(6), and 1 in the Commercial General Liability Policy, and by exclusions (n) and (o)(3) in the Contractors Umbrella Liability Policy. Venetian argues that the damages sought by Brockmiller in the underlying suit for negligence are covered by the two policies, because negligence is an "accident," as that term is used by the policies. Venetian also argues that the general liability policy excepts insured contracts from the exclusions, and the claimed exclusions in both policies do not apply, *1079 because Venetian was not the sole cause of the loss alleged by Brockmiller.
In Columbia Mut. Ins. Co. v. Schauf, 967 S.W.2d 74 (1998), the Missouri Court of Appeals explained that
[a] commercial general liability policy . . . is not intended to protect business owners against every risk of operating a business . . . . [G]eneral liability coverage is not intended as a guarantee of the quality of an insured's product or work. In an attempt to give effect to the intent underlying both the coverage and exclusion provisions of commercial liability policies, courts have interpreted such policies as insuring the risk of the insured causing damage to other persons and their property, but not insuring the risk of the insured causing damage to the insured's own work.
Id. at 77 (internal citations and quotations omitted).
There are two duties involved in this case: the duty to defend and the duty to indemnify. An insurer's duty to defend is broader than its duty to indemnify. Millers Mut. Ins. Assoc. of Ill. v. Shell Oil Co., 959 S.W.2d 864, 869 (Mo.Ct.App.1997). An insurer has a duty to defend an insured if the allegations of the complaint against the insured state a claim which is potentially or arguably within the policy's coverage. Id. Here, as the parties acknowledged at the hearing, the duty to defend rises and falls with the duty to indemnify.
Venetian's argument is without merit that its alleged negligence, or the negligence of another party in pouring the cement subfloor, constituted an "accident," and hence an "occurrence" within the meaning of either insurance policy. See American States Ins. Co. v. Mathis, 974 S.W.2d 647, 650 (Mo.Ct.App.1998) (the term "occurrence" in a commercial general liability policy, defined as an "accident," does not encompass the negligence or breach of contract in the insured's performance of its contract work; such "cannot be described as an undesigned or unexpected event"); Hawkeye-Security Ins. Co., 6 S.W.3d at 426 (same as to underlying claims of breach of contract in the performance of contract work by insured).
Thus, Venetian has not satisfied its burden of showing an "occurrence" within the meaning of the policies. Under such circumstances, it is unnecessary to determine whether any exclusions apply. See Hawkeye-Security Ins. Co., 6 S.W.3d at 427.[1]
Accordingly, the motion of plaintiff for summary judgment (Doc. No. 16) must be sustained.
A separate Declaratory Judgment is filed herewith.

DECLARATORY JUDGMENT
Pursuant to the Memorandum filed herewith,
IT IS HEREBY ORDERED that the motion of plaintiff Cincinnati Insurance *1080 Company for summary judgment (Doc. No. 16) is sustained.
IT IS HEREBY DECLARED that the coverages of Commercial General Liability Insurance Policy No. CPP0666853, effective January 1, 1996; and No. CCC 438 7336, effective January 1, 1996, do not require insurer plaintiff Cincinnati Insurance Company to either defend or to indemnify insured defendant Venetian Terrazzo, Inc., for allegations in the judicial action Brockmiller Construction Co., Inc. v. Venetian Terrazzo Company, Inc., pending in the Circuit Court of Cape Girardeau County, Missouri.
IT IS FURTHER ORDERED that each party shall bear its own costs of the action.
NOTES
[1] The same result would be reached had Cincinnati argued, alternatively, that the losses in this case were not "property damage," as defined in the policy. See Esicorp, Inc. v. Liberty Mut. Ins. Co., 266 F.3d 859, 862-64 (8th Cir.2001) (holding that under Missouri law, the term "property damage" defined as "physical injury to tangible property," does not cover losses due to the insured's negligent performance of contract work, where the defective work does not cause accidental injury to surrounding property). In Esicorp, Inc., id. at 863 n. 2, the Eighth Circuit questioned the continued validity of its decision in Missouri Terrazzo Co. v. Iowa National Mutual Insurance Company, 740 F.2d 647 (8th Cir. 1984), which held that the diminution in the value of a building due to the negligent installation of a floor by the insured constituted "property damage" within the meaning of a CGL policy. In any event, Missouri Terrazzo distinguished diminution in value from cost of repair or replacement of the defective floor.