*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0177P (6th Cir.)
File Name: 04a0177p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DETROIT WATER TEAM JOINT
VENTURE,

      *Plaintiff-Appellee/
      Cross-Appellant,*

    *v.*

AGRICULTURAL INSURANCE
COMPANY, an Ohio
Corporation,

      *Defendant-Appellee,*

AMERICAN NATIONAL FIRE
INSURANCE COMPANY, an
Ohio Corporation,

      *Defendant-Appellant/
      Cross-Appellee.*

Nos. 02-1324/1419

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-73239—Robert H. Cleland, District Judge.

Argued: October 23, 2003

Decided and Filed: June 11, 2004

Before: KEITH, MARTIN, and SUTTON, Circuit Judges.

2    *Detroit Water Team v.*        Nos. 02-1324/1419
     *Agricultural Ins. Co., et al.*

_____

## COUNSEL

**ARGUED:** Ann E. Erickson Gault, COLLINS, EINHORN, FARRELL & ULANOFF, Southfield, Michigan, for Appellant. Raymond A. Fylstra, KUBASIAK, FYLSTRA, REIZEN & ROTUNNO, Chicago, Illinois, Thomas B. Orlando, FORAN, GLENNON, PALANDECH & PONZI, Chicago, Illinois, for Appellees. **ON BRIEF:** J. Mark Cooney, COLLINS, EINHORN, FARRELL & ULANOFF, Southfield, Michigan, for Appellant. Raymond A. Fylstra, John C. Anderson, KUBASIAK, FYLSTRA, REIZEN & ROTUNNO, Chicago, Illinois, Stephen J. Pokoj, FILDEW, HINKS, GILBRIDE, MILLER & TODD, Detroit, Michigan, Thomas B. Orlando, Matthew S. Ponzi, FORAN, GLENNON, PALANDECH & PONZI, Chicago, Illinois, Daniel J. Seymour, NAGI, BAXTER & SEYMOUR, Detroit, Michigan, for Appellees.

_____

## OPINION

_____

   BOYCE F. MARTIN, JR., Circuit Judge. In these consolidated cases, Detroit Water Team Joint Venture seeks insurance coverage under an American National Fire Insurance Company commercial general liability policy and an Agricultural Insurance Company builder's risk policy for a loss incurred during the course of its renovation of a City of Detroit water plant. The district court held that coverage was available under the American National policy, but not under the Agricultural policy. American National appeals the district court's award of summary judgment in favor of Detroit Water Team with respect to coverage under the commercial general liability policy, and Detroit Water Team appeals the award of summary judgment in favor of

Agricultural with respect to coverage under the builder's risk policy. For the reasons discussed below, the district court's judgment is affirmed in part and reversed in part.

## I.  *BACKGROUND*

Detroit Water Team entered into a "design/build" contract with the City of Detroit to renovate the City's water plant. In connection with that project, Detroit Water Team procured two insurance policies: (1) a commercial general liability policy issued by American National, which covered Detroit Water Team and one of its subcontractors, Adamo Demolition Company; and (2) a builder's risk policy issued by Agricultural, which covered Detroit Water Team, all of its subcontractors and other identified parties.

The water plant renovation project called for demolition of a portion of an old reservoir. Detroit Water Team hired Adamo, a demolition subcontractor, to perform this demolition work. Connected to one wall of the reservoir was a semi-circular manhole structure. The reservoir and the manhole structure shared one common wall that was made of concrete; the rest of the manhole structure was made of masonry. The manhole structure contained an electrical system comprised of live wires, feeds and tubes, which provided power and air to the functioning water plant. The City and Detroit Water Team agreed that this electrical system, along with the manhole structure that housed it, would remain entirely intact throughout the renovation project so that the water plant could continue to operate during that time. Nevertheless, in the course of demolishing the reservoir, Adamo also tore down the concrete wall that the reservoir shared with the manhole, which caused the entire manhole structure to collapse and the electrical system within to sustain considerable damage.

Detroit Water Team immediately repaired the damaged electrical system and notified American National and

Agricultural of its expenses.[1] After both insurers denied coverage, this lawsuit ensued and all parties moved for summary judgment. The district court held that coverage was available under the American National commercial general liability policy, but not under the Agricultural builder's risk policy. American National appeals the award of summary judgment in favor of Detroit Water Team, and Detroit Water Team appeals the award of summary judgment in favor of Agricultural.

## II.  *ANALYSIS*

We review *de novo* a district court's award of summary judgment, as well as its interpretation of an insurance contract. *Parameter Driven Software v. Massachusetts Bay Ins. Co.*, 25 F.3d 332, 336-37 (6th Cir. 1994). Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether a genuine issue of material fact exists, we must draw all reasonable inferences in favor of the nonmoving party. *Bonds v. Cox*, 20 F.3d 697, 701 (6th Cir. 1994).

### A.  *American National Policy*

Our analysis of whether coverage is available under the American National policy begins – and ends – with the policy's insuring agreement, which provides that American National "will pay those sums that the Insured becomes

---

[1] As discussed more fully herein, Detroit Water Team argues that it was obligated to repair the electrical system by virtue of its contract with the City, which required it to "take immediate action to restore" any interrupted service "within twenty-four (24) hours or less."

legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The district court held that Detroit Water Team was not "legally obligated" to repair the electrical system, but predicted – noting the lack of Michigan cases on point – that the Michigan Supreme Court would nevertheless require American National to prove that it suffered prejudice as a result of Detroit Water Team's actions in order to bar coverage. Finding that American National had failed to demonstrate any prejudice, the district court held that coverage was not barred. For the following reasons, we hold that the district court was correct in determining that Detroit Water Team was not "legally obligated" to repair the electrical system, but incorrect in predicting that the Michigan Supreme Court would require American National to prove that it suffered prejudice in order to bar coverage on that ground.

It is well-established that an insured has the initial burden of proving that its losses fall within the scope of the policy's insuring agreement. *See, e.g., Esicorp, Inc. v. Liberty Mut. Ins. Co.*, 266 F.3d 859, 864 (8th Cir. 2001); *Data Specialties, Inc. v. Transcont'l Ins. Co.*, 125 F.3d 909, 911 (5th Cir. 1997). Thus, Detroit Water Team has the burden of proving that it was "legally obligated" to pay the "sums" that it incurred in repairing the damaged electrical system. The phrase "legally obligated" necessitates "more than inchoate or potential liability." *Aetna Cas. & Sur. Co. v. Dow Chem. Co.*, 10 F. Supp. 2d 771, 797 (E.D. Mich. 1998) (citing *Ryan v. Royal Ins. Co. of Am.*, 916 F.2d 731, 738-43 (1st Cir. 1990)). Although the Michigan Supreme Court has never expressly defined the phrase "legally obligated," decisions from the Michigan Court of Appeals "imply" – but do not expressly hold – "that the term 'legal obligation' requires either a judicial determination of liability or a settlement between the insurer, insured and the claimant . . . ." *Coil Anodizers, Inc. v. Wolverine Ins. Co.*, 327 N.W.2d 416, 418 (Mich. App. 1982) (citing *Giffels v. Home Ins. Co.*, 172 N.W.2d 540

(Mich. App. 1969); *MacDonald v. State Farm Mut. Auto. Ins. Co.*, 165 N.W.2d 665 (Mich. App. 1968)). In this case, it is undisputed that there has been no judicial determination or settlement establishing Detroit Water Team's liability.

Detroit Water Team argues that its legal obligation to repair the electrical system derives from two sources: general tort principles and its contract with the City. We disagree on both fronts. In an effort to establish tort liability, Detroit Water Team argues that "[t]here is a well settled princip[le] in Michigan, as well as other jurisdictions, that a duty of ordinary care arises from the performance of a contractual obligation." *Chamberlain v. Bissell*, 547 F. Supp. 1067, 1081 (W.D. Mich. 1982). Detroit Water Team contends that, by virtue of its design/build contract with the City, it had a contractual obligation "to exercise ordinary care to protect the [City]'s property from damage resulting from [Detroit Water Team's] demolition activities," and that Detroit Water Team's negligent performance of that contractual obligation was actionable in tort. Detroit Water Team Br. at 41.

Detroit Water Team's argument misconstrues the identity of the negligent party, if any, in this case. As the parties have stipulated, it was Adamo, not Detroit Water Team, whose demolition activities proximately caused the damage to the electrical system. There is no evidence that Detroit Water Team has committed any negligence whatsoever. Detroit Water Team apparently assumes that it is liable for Adamo's negligence, but the general rule under Michigan law is that a general contractor is not liable for the negligence of its subcontractor. *Candelaria v. B.C. Gen. Contractors, Inc.*, 600 N.W.2d 348, 352 (Mich. App. 1999). While several exceptions to this general rule exist, *id.*, Detroit Water Team has not argued that any apply here, and our independent review of the record confirms that none of the exceptions applies under the facts of this case. Therefore, Detroit Water Team has failed to carry its burden of proving that it was "legally obligated" in tort to repair the electrical system.

Detroit Water Team also argues that it was "legally obligated" to make the repairs by virtue of its contract with the City, which required it to "take immediate action" to restore any interrupted service within twenty-four hours.**²** There is some dispute as to whether contractual liability, as opposed to tort liability, can ever constitute a "legal[] obligat[ion]" within the meaning of the policy's insuring agreement. *Compare* 1 Lee R. Russ & Thomas F. Segalla, *Couch in Insurance* § 103:14 (3d ed. 2003) ("While the phrase 'legal liability' includes liability assumed by contract, the phrases 'liability imposed by law,' and 'legally obligated to pay as damages' do not."), *and Hartford Accident & Indem. Co. v. Reale*, 644 N.Y.S.2d 442, 443 (App. Div. 1996) ("the purpose of a commercial general liability policy . . . is to provide coverage for tort liability for physical damage to others and not for contractual liability of the insured for economic loss"), *and Action Ads, Inc. v. Great Am. Ins. Co.*, 685 P.2d 42, 45 (Wyo. 1984) (liability insurance "encompasses liability which the law imposes on all insureds for their tortious conduct and not on the liability which a particular insured may choose to assume pursuant to contract"), *with Vandenburg v. Superior Court*, 982 P.2d 229, 243-46 (Cal. 1999) (holding that it is "incorrect" to "distinguish[] contract from tort liability for purposes of the CGL insurance coverage phrase 'legally obligated to pay as damages[]'").

Assuming – without deciding – that contractual liability can, in appropriate cases, constitute a legal obligation within the meaning of the policy's insuring agreement, the question becomes whether this is such an appropriate case. The

---

**²**Detroit Water Team seems to suggest that this provision requires any interrupted service to be completely restored within twenty-four hours of the interruption. In fact, however, we read the provision as merely requiring that "immediate action" aimed at restoring the service be taken within twenty-four hours.

answer to that question would generally depend upon whether Detroit Water Team's risks in dealing with the City – specifically, the risk that it would have to take immediate action to restore an interrupted service – aligned with the risks that Detroit Water Team and American National agreed would be insured under the policy. While we do not believe that these risks aligned, we need not definitively decide that issue given that coverage would be barred in any event because Detroit Water Team's contractual obligation to make the repairs was not sufficiently definite as to constitute a legal obligation for which the insuring agreement provides coverage.

In determining whether a particular loss falls within the scope of an insuring agreement, it is necessary to focus upon "[t]he nature of the damage and the risk involved . . . ." *Vandenburg*, 982 P.2d at 244. The nature of the damage in this case is that during the course of its demolition work, Adamo caused property damage to the electrical system that was running the City's water plant. Adamo was a named insured under the American National policy that was issued to Detroit Water Team, and the risk of Adamo causing such property damage was precisely the "nature" of the "risk" for which Adamo was insured under that policy. If any party was "legally obligated" to pay any "sums" because of this incident, it was Adamo. Notably, had Detroit Water Team not rushed to repair the damage, the City presumably would have sought damages from Adamo, in which case coverage likely would have been available under the American National policy. Detroit Water Team's anticipatory actions, however, thwarted that process from occurring. Although Detroit Water Team did undertake certain contractual obligations to restore interrupted service, any legal liability that Detroit Water Team may have incurred on the basis of that contract is entirely speculative. There was certainly no judicial determination or settlement establishing Detroit Water Team's liability in this regard, nor any other reason to believe that its liability was anything more than merely

"inchoate" or "potential." *Aetna*, 10 F. Supp. 2d at 797 (citing *Ryan*, 916 F.2d at 738-43). Therefore, Detroit Water Team has failed to carry its burden of proving that it was "legally obligated" by contract to repair the electrical system.

Having concluded that Detroit Water Team was not "legally obligated" to repair the electrical system, we must next address the district court's prediction that the Michigan Supreme Court would require insurers like American National to prove that they suffered prejudice in order to bar coverage for a loss that does not fall within the policy's insuring agreement. The district court's prediction was based upon its view that the purpose of the "legally obligated" language is analogous to the purpose of "notice" and "cooperation" provisions – i.e., to prevent collusion between the insured and the claimant – and that because insurers generally must prove prejudice in order to bar coverage in reliance upon an insured's breach of a "notice" or "cooperation" provision, a similar prejudice requirement should apply to the "legally obligated" language in the insuring agreement. Notably, however, the district court cited no cases – from Michigan or any other jurisdiction – that recognize or impose such a requirement.

We begin by noting that not even Detroit Water Team attempts to defend the district court's imposition of the prejudice requirement, and our independent research leads us to conclude that the imposition of such a requirement is indefensible. The critical flaw in the district court's reasoning is that it overlooks a significant distinction between the "legally obligated" language and the "notice" and "cooperation" provisions: the "legally obligated" language appears in the policy's insuring agreement, whereas the other provisions appear in the policy's exclusions. By requiring an insurer to prove that it suffered prejudice as a result of having to provide coverage for a loss that does not even fall within the insuring agreement, the district court has not only sanctioned an absurd result, it has relieved the insured of its

burden of proving the applicability of the insuring agreement, *see supra Esicorp*, 266 F.3d at 864; *Data Specialties*, 125 F.3d at 911, and has shifted that burden onto the insurer. We do not believe that the Michigan Supreme Court would adopt a rule that would lead to these consequences, particularly in light of the conspicuous lack of authority supporting such a rule.

In sum, we hold that because Detroit Water Team was not "legally obligated" to pay for the repairs to the electrical system, American National properly denied coverage on that ground – regardless of whether it suffered prejudice as a result of Detroit Water Team's actions.

### B. *Agricultural Builder's Risk Policy*

The only issue regarding the Agricultural builder's risk policy concerns the applicability of "Exclusion M," which bars coverage for:

> [l]oss or damage to property in existence at the commencement of this policy which [1] is not a part of the construction operations insured hereunder and/or [2] for which the value is not included in the total insured value shown in the schedule attached to this policy.

Detroit Water Team appeals the district court's determination that this exclusion bars coverage for the loss at issue in this case.

It is undisputed that the electrical system was "property in existence at the commencement of th[e] policy." Detroit Water Team asserts that the phrase "and/or" is ambiguous and, therefore, that the exclusion should be read to apply only if both conditions are satisfied – i.e., if both the property "is not a part of the construction operations insured hereunder" and the "value [of the property] is not included in the total insured value shown in the schedule attached to this policy."

Detroit Water Team also asserts that, regardless of how "and/or" is interpreted, neither condition specified in exclusion M is satisfied in this case. We find both assertions unpersuasive.

First, we hold that the use of the "and/or" language in exclusion M unambiguously means that the exclusion applies if either or both of the two specified conditions are met. *See, e.g., Michigan Pub. Serv. Co. v. City of Sheboygan*, 37 N.W.2d 116, 129 (Mich. 1949) ("There are occasions where intent may properly be expressed by 'and/or,' indicating 'both, or either.'"); *Local Div. 589, Amalgamated Transit Union, AFL-CIO, CLC v. Commonwealth*, 666 F.2d 618, 627 (1st Cir. 1981) ("the words 'and/or' commonly mean 'the one or the other or both'").

Second, we hold that the second condition specified in exclusion M has been satisfied – i.e., the "value" of the electrical system was "not included in the total insured value shown in the schedule attached to th[e] policy." The schedule attached to the policy provides as follows:

(a)  Estimated Contract Price . . . . . . . . . . $214,542,000

(b)  Soft Costs . . . . . . . . . . . . . . . . . . . . . . . .$2,500,000

(c)  Value of Owner Furnished Material . . . .$ Included

(d)  Total Insured Value . . . . . . . . . . . . . . $217,042,000

The record reveals that the "Total Insured Value" figure is equivalent to the amount of the actual cash replacement value of the insurable work, or the amount that would be necessary to redo the entire project if everything were somehow destroyed. The undisputed deposition testimony of David May, Vice President and General Counsel of Walsh Construction Company of Illinois – a general contractor that participated in the joint venture with Detroit Water Team in

this case – indicates that the "Total Insured Value" does not include the value of the electrical system contained within the manhole.

Because the value of the electrical system was "not included in the total insured value shown in the schedule attached to th[e] policy," the district court properly held that exclusion M bars coverage under the Agricultural policy.

### III.  *CONCLUSION*

For all the foregoing reasons, we REVERSE the district court's award of summary judgment in favor of Detroit Water Team and REMAND this case to the district court with instructions to award summary judgment in favor of American National, and we AFFIRM the district court's award of summary judgment in favor of Agricultural.