353 F.Supp.2d 1053 (2004)
DIE-CUTTING DIVERSIFIED, INC., Plaintiff,
v.
UNITED NATIONAL INSURANCE COMPANY, Defendant.
No. 4:04 CV 134 DDN.
United States District Court, E.D. Missouri, Eastern Division.
November 9, 2004.
Mark M. Wennerm, Paul T. Krispin, Jr., Clayton, MO, for Plaintiff.
Bradley J. Baumgart, Michael E. Brown (argued), Shughart, Thomson & Kilroy, Kansas City, MO, Fairfax Jones, Casserly Jones, P.C., St. Louis, MO, for Defendant.

MEMORANDUM
NOCE, United States Magistrate Judge.
This action is before the court on the motion of defendant United National Insurance Company for summary judgment. *1054 (Doc. 15.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). A hearing was held on October 5, 2004.
Plaintiff Die-Cutting Diversified, Inc., commenced this action in the Circuit Court of the City of St. Louis, Missouri. (Doc. 1, Ex. A at 2.) It alleges that defendant United National, its insurer, wrongly denied its claim for benefits under its policy. United National removed the case to this court under 28 U.S.C. § 1441 on the basis of diversity jurisdiction. (Doc. 1.)

The pleadings
Die-Cutting alleges United National's failure to pay its claim was (1) without just cause or excuse; (2) unreasonable; (3) based on incorrect reasons; (4) determined without claim investigation; and (5) based on immaterial reasons not actually relied on in denying coverage. (Doc. 1, Ex. A at ¶ 11.) Moreover, Die-Cutting alleges that United National's refusal to pay was vexatious in violation of Mo.Rev.Stat. §§ 375.296 and 375.420, therefore requiring United National to reimburse it for expenses, and pay interest, penalties, attorney's fees, and costs. (Id. at 4.)
In its answer, United National admits it issued the insurance policy attached to Die-Cutting's complaint, that Die-Cutting entered into a contract with a customer to provide services, that Die-Cutting failed to render a conforming product, and that it delivered a new product to its customer in order to meet both the customer's requirements and the delivery date set forth in the contract. (Doc. 6 at ¶¶ 2, 3.) Moreover, United National admits Die-Cutting reported its loss on April 22, 2003. (Id. at ¶ 5.)
United National admits it denied Die-Cutting's claim for the reasons set forth in the complaint. (Id. at ¶ 6.) However, it further asserts the reasons for denial presented in Die-Cutting's complaint are not exhaustive. (Id.) United National denies all other allegations in Die-Cutting's complaint. (Doc 6.)
As affirmative defenses, United National alleges (1) Die-Cutting fails to state a cause of action upon which relief may be granted; (2) the claims are barred by estoppel, waiver, acquiescence, laches, accord and satisfaction, and assumption of the risk; (3) Die-Cutting had no legal obligation to pay damages as a result of rendering or failing to render professional services; (4) coverage will only attach to claims made by a third party; (5) Die-Cutting's claim is not covered because of a policy exclusion relating to performing a contract for professional services; and (6) Die-Cutting failed to provide notice or obtain consent to incur the alleged expenses. (Id. at 3-4.)

Summary judgment standard
Summary judgment must be granted if the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Union Elec. Co. v. Southwestern Bell Tel. L.P., 378 F.3d 781, 785 (8th Cir.2004) ("Th[e] Court determines whether the evidence, when viewed in the light most favorable to the non-moving party, and according it the benefit of all reasonable inferences, shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law."). "A fact is `material' if it might affect the outcome of the case and a factual dispute is `genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Scottsdale Ins. Co. v. *1055 Tri-State Ins. Co. of Minn., 302 F.Supp.2d 1100, 1103 (D.N.D.2004).
Initially, the moving party must demonstrate the absence of an issue for trial. Celotex, 477 U.S. at 323, 106 S.Ct. 2548. Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in its pleadings but must instead set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir.2003). The nonmoving party also "must ... provide evidence of `specific facts creating a triable controversy.'" Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 800 (8th Cir.), cert. denied, ___ U.S. ___, 125 S.Ct. 436, 160 L.Ed.2d 318 (2004) (quoting Jaurequi v. Carter Mfg. Co. Inc., 173 F.3d 1076, 1085 (8th Cir.1999)).
The pleadings, the parties' proffer of evidence, and the arguments of counsel establish that there is no genuine issue of material fact and that United National is entitled to judgment as a matter of law.

Undisputed facts
Die-Cutting is a Missouri corporation in the business of commercial die-cutting with its place of business in St. Louis, Missouri. (Doc. 1, Ex. A at 2.) United National is a Pennsylvania corporation licensed to do insurance business in Missouri. (Doc. 1 at 1, Ex. A at 1.) United National issued a professional (non-medical) liability policy to Die-Cutting for the coverage period beginning February 23, 2003 and ending February 23, 2004. (Doc. 1, Ex. A.) The policy is attached to the plaintiff's pleading. The policy bears the caption "PROFESSIONAL (NON-MEDICAL) LIABILITY COVERAGE FORM  CLAIMS MADE COVERAGE." (Id.) The relevant provisions of the policy state:
SECTION 1  COVERAGE
1. Insuring Agreement
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of the rendering of or failure to render "professional services" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any incident and settle any claim or "suit" that may result.

* * * * * *
b. This insurance applies to "professional services" only if: ...
(3) A claim for damages because of the rendering of or failure to render "professional services" is first made against any insured....
2. Exclusions
This insurance does not apply to: ...
f. Any claim based upon a warranty or guarantee, or breach of contract in respect of any agreement to perform "Professional Services" for a specified fee.
(Doc. 6, Ex. A.)
On or about February 28, 2003, Die-Cutting undertook to die-cut a retail display product for a customer, Color Art, Inc. Die-Cutting agreed to deliver the completed product to Color Art within a given time period. Die-Cutting produced a product that did not conform with the instructions given by the customer. When so advised by the customer, Die-Cutting immediately cut and delivered a new product, that conformed to the agreement, to Color Art in time to meet the original delivery time requirement. In doing so, Die-Cutting incurred expenses as a direct and proximate result of having to replace *1056 its original product; this amount included labor, packaging, and related expenses.
Die-Cutting reported the loss to United National and claimed damages under the insurance policy. United National denied the claim for payment, because Die-Cutting (1) did not have a legal obligation to pay damages; (2) did not provide United National immediate notice; (3) did not obtain its consent prior to replacing the product; and (4) incurred the expenses due to a breach of an agreement to perform professional services, which is excluded under the policy.

Discussion
The court has subject matter jurisdiction over this action, because plaintiff is incorporated under the laws of Missouri where it has its principal place of business, defendant is incorporated under the laws of Pennsylvania, and the amount in controversy totals more than $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).
In this diversity action, the court must look to the rules of decision that the forum state Missouri courts would apply. Donovan v. Harrah's Maryland Heights Corp., 289 F.3d 527, 529 (8th Cir.2002).
Missouri adopted sections 188 and 193 of the Restatement (Second) of Conflict of Laws (1971) for choice-of-law issues in casualty insurance contracts. Crown Center Redevelopment Corp. v. Occidental Fire & Cas. Co. of North Carolina, 716 S.W.2d 348, 358 (Mo.App.1986). Section 188 applies to policies with no choice-of-law provision  as here. It provides that the law of the state with the most significant relationship to the transaction and parties governs. Restatement (Second) of Conflict of Laws section 188(1). It also provides what contacts are considered: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." Restatement (Second) of Conflict of Laws section 188(2).
Viacom, Inc. v. Transit Cas. Co., 138 S.W.3d 723, 724-25 (Mo.2004) (en banc). Section 188 gives more weight to "the principal location of the insured risk" than any other single choice-of-law, significant relationship factor. Egnatic v. Nguyen, 113 S.W.3d 659, 665 (Mo.Ct.App.2003).
In this case, the policy does not contain a choice-of-law provision. Thus, the court must look to the Restatement factors. The undisputed facts indicate that Missouri has the most significant relationship to the incident and the parties at bar. One of the parties is a Missouri corporation with its place of business in Missouri. And plaintiff produced both the original non-conforming and the later conforming products at its Missouri die-cutting business location in the City of St. Louis. The parties do not expressly dispute the application of Missouri law.
The preeminent issue is whether Die-Cutting's expenses in providing its customer with a replacement product that conformed with its contract with its customer are covered under the insurance policy at issue. The court must interpret the insurance contract at issue as a matter of law. Assicurazioni Generali S.P.A. v. Black & Veatch Corp., 362 F.3d 1108, 1111 (8th Cir.2004) (district court interpretation of an insurance policy a question of law); Universal Underwriters Ins. Co. v. Lou Fusz, 300 F.Supp.2d 888, 893 (E.D.Mo.2004) (same).
Die-Cutting argues the policy's coverage clause is ambiguous and should be construed in its favor.
Insurance contracts must be construed to afford plain meaning to unambiguous language and read ambiguous terms *1057 against the insurer. Fremont Indem. v. Lawton-Byrne-Bruner Ins. Agency Co., 701 S.W.2d 737 (Mo.App.1985). Under Missouri law, an allegedly ambiguous phrase must be considered in the context of the policy as a whole. Nixon v. Life Investors Ins. Co., 675 S.W.2d 676 (Mo.App.1984). Ambiguity exists in an insurance contract if duplicity, indistinctness or uncertainty of meaning is evident. Id. For example, if there is doubt or uncertainty regarding the meaning of policy language and the language is fairly susceptible to two interpretations, then the language is ambiguous.
Interco Inc. v. Nat'l Sur. Corp., 900 F.2d 1264, 1266-67 (8th Cir.1990); Esicorp, Inc. v. Liberty Mut. Ins. Co., 266 F.3d 859, 862 (8th Cir.2001) ("Under Missouri law, the language in an insurance policy is to be given its ordinary meaning unless another meaning is plainly intended.")
The relevant policy provision states that a "claim for damages" must be made against Die-Cutting to trigger United National's duty to pay. The terms "claim" and "damages" are not defined in the policy. It is clear from the policy that "claim" means something other than an actual "suit." The policy refers to "claim" and "suit" separately and in the alternative. (Doc. 16, Ex. A. at unnumbered 21-26.) The policy does not require the filing of a lawsuit as a condition of the insurer's duty to pay. And the record indicates that plaintiff's customer Color Art made a "claim" against it on February 28, 2003.
The policy requires also that the "claim" must be for "damages." Because "damages" is not defined in the policy, the court will give the term its ordinary meaning, unless another meaning was plainly intended. See Esicorp, Inc., 266 F.3d at 862 (applying Missouri law). Merriam-Webster's Dictionary defines damages as "compensation in money imposed by law for loss or injury." Merriam-Webster's Dictionary, available at http://www.m-w.com/cgi-bin/dictionary ?book=Dictionary & va=damages (last visited September, 16, 2004); see Continental Ins., 842 F.2d at 985 (recognizing the Webster's dictionary as a source for the plain meaning definition of "damages").
Reviewing the insurance policy as a whole, as the court must, the court concludes that the use of the term "damages" is not ambiguous and has the ordinary meaning of money paid to compensate for a loss or injury. Applying this ordinary meaning of "damages" to the facts at bar, the court concludes that Die-Cutting's expenses were not incurred pursuant to a claim for damages by Color Art. Die-Cutting entered into a contract for professional services. It was informed by Color Art that the delivered product did not conform to the contract specifications. At that point, Die-Cutting chose to remedy its nonconformance by providing another product that conformed with the contract with its customer.
The record does not indicate that Color Art made a demand for the payment of money or compensation for a loss or injury it sustained; it asked for a product that conformed with the contract it had with Die-Cutting. Nothing in the record suggests that Color Art sustained any monetary loss for which it claimed damages from Die-Cutting, as the ordinary meaning of "damages" is understood. Any monetary loss was sustained by Die-Cutting and, as the policy clearly provides, a claim for damages must be made against Die-Cutting not by Die-Cutting to trigger policy coverage.
Die-Cutting cites Slay Warehousing Co., Inc., v. Reliance Ins. Co., as support for its argument that mitigation expenses are recoverable as damages under an insurance policy. 471 F.2d 1364 (8th Cir.1973). In Slay, the Eighth Circuit held an *1058 insurer was liable, pursuant to an inland marine policy that covered damage to property of third parties, for expenses plaintiff incurred in acting to protect its property from further damage. Id. at 1365.
Unlike the case at bar, the policy in Slay contained a clause that stated the insurer may not be required to pay for any loss sustained if the insured did not attempt to protect and salvage the property. Id. The court found this type of provision can imply "that the assured is acting at the insurance company's request," subjecting the insurance company to liability for incurred expenses. Id. at 1367-68. Absent similar language that requires Die-Cutting to mitigate or prevent damages, the court is not persuaded that Slay demands a similar holding in this case.
Even if "damages" is interpreted to include mitigation expenses, when reviewed in the context of the insurance policy as a whole, the instant claim is not covered under the policy. The policy specifically excludes "[a]ny claim based upon ... breach of contract in respect of any agreement to perform `Professional Services' for a specified fee." If Die-Cutting had not provided conforming goods within the contract period, any cause of action Color Art may have had in this regard would likely lie in breach of contract. It would be incongruous to construe the plain meaning of the policy to include coverage for a loss incurred to prevent a breach of contract claim, while recognizing that the same policy would not cover the breach of contract itself. See Brozo v. Oracle Corp., 324 F.3d 661, 671 (8th Cir.) ("A contract should not be construed so strictly as to lead to a harsh or absurd result."), cert. denied, 540 U.S. 1017, 124 S.Ct. 578, 157 L.Ed.2d 432 (2003); Slay, 471 F.2d at 1368 ("The sense in which a word or phrase is used is normally determined by its context."); Lee R. Russ, Mitigation of Loss, 11 Couch on Ins. § 168:11 (3d. ed. 2004) ("[T]o be recoverable, the mitigation expenses must relate to a covered loss, either existing, or imminent.") (internal footnotes omitted).
Die-Cutting argues that no reasonable insured would believe that a similar insurance policy would exclude coverage for breach of contract. This argument is without merit, because the instant policy clearly and unambiguously states on its face that it does not cover a breach of contract claim. Furthermore, such an exclusion does not render the policy virtually meaningless, as Die-Cutting implies. The Eighth Circuit recognized in Slay that "[every] case must be examined in light of the specific insuring agreement...." Slay, 471 F.2d at 1367. The subject policy excludes any claim based upon breach of contract, not any claim stemming from a contract context. This distinction still allows for tort claims to fall within policy coverage.
For these reasons the motion of defendant for summary judgment is sustained. An appropriate order is issued herewith.

ORDER OF SUMMARY JUDGMENT
In accordance with the Memorandum opinion filed herewith,
IT IS HEREBY ORDERED that the motion of defendant United National Insurance Company for summary judgment (Doc. 15) is sustained. The action is dismissed with prejudice. Any pending motion is denied as moot.